IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WILD TYPE, INC. D/B/A/ WILDTYPE And UPSIDE FOODS, INC., §§§§§§§§§§§§§§§§§ *Plaintiffs*, <br> v. <br> JENNIFER A. SHUFORD, in her official capacity as the Commissioner of the Texas Department of State Health Services; CECILE ERWIN YOUNG, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission; KEN PAXTON in his official capacity as the Attorney General of Texas; and DELIA GARZA in her official capacity as the County Attorney of Travis County, <br> *Defendants*. | CIVIL ACTION NO. <br> 1:25-cv-1408-ADA-ML |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, Defendant Delia Garza (hereinafter "Defendant Garza") and files her Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I. INTRODUCTION**

1.      This suit challenges the constitutionality of a recently enacted law restricting the sale of "cultivated" meat in Texas. Defendant Garza played no role in the passage of the law, nor has she expressed any intent to pursue any civil or criminal action against Plaintiffs or anyone under the new law. The mere fact that the cited law makes this a *possibility* does not support any claim against Defendant Garza. Defendant Garza will abide by whatever temporary orders or final judgment the Court enters in this matter. The question of constitutionality is one for the State of Texas to defend; nevertheless, Defendant Garza denies Plaintiffs have stated a claim against her

1

based on their interpretation of the dormant Commerce Clause and Supremacy Clause upon which Plaintiffs' claims rely. Certainly, no claims against Defendant Garza are ripe for consideration, depriving Plaintiffs of standing and depriving this court of jurisdiction. Any claims concerning enforcement are purely speculative in nature, reinforcing the lack of ripeness and rendering Plaintiffs unable to state a plausible claim against Defendant Garza.

2.      Moreover, the lengthy and repetitious Complaint ultimately attempts to advance *only one* cause of action on behalf of Plaintiff Wild Type, Inc. d/b/a Wildtype for a violation of the "dormant Commerce Clause" because of the new law's alleged discriminatory effect on competition from out of state. Plaintiff Wild Type produces cultivated seafood products. Plaintiff UPSIDE Foods, Inc. attempts to advance the same "commerce" claim, as well as four others, that allegedly lie in "express federal preemption." In truth, UPSIDE bases its "four" other "Claims for Relief" on two avenues for relief for two alleged violations of the Supremacy Clause. Specifically, UPSIDE seeks relief for two alleged Supremacy Clause violations pursuant to Section 1983 and pursuant to the Court's inherent power to provide equitable relief. UPSIDE claims two categories of alleged supremacy of, and therefore preemption by, the Poultry Products Inspection Act's ("PPIA's") "ingredients" and "facilities" clauses.[1]

3.      Regardless of the viability of these facial and as applied challenges concerning the scope and effect of the laws enacted and any regulations adopted under SB 261, there is no plausible claim that Defendant Garza has engaged in, or threatened to engage in, any acts that hinder Plaintiffs in their pursuit of a market in Texas. The are no factual allegations that Defendant Garza played any role in enacting or enforcing the challenged law or that she has threatened any action

---

[1] Importantly, "the Supremacy Clause does not provide an implied right of action…." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329. (2015). As such, UPSIDE's Third and Fifth Rights of Action cannot stand.

against Plaintiffs. There is only the allegation that she might, someday, play a role under the enforcement provisions of SB 261. Additionally, the constitutional claims lack sufficient factual or legal support to state a plausible claim. As such, Plaintiffs have failed to state a claim within the jurisdiction of the Court and stated a claim for which relief can be granted.

## II. MOTION TO DISMISS 12(b)(1)

### A.      Lack of Subject Matter Jurisdiction

#### 1.      *Jurisdictional Standards Require Dismissal of Defendant Garza.*

4.      A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks dismissal based on the grounds that the court lacks subject matter jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). The federal courts' jurisdiction is limited, and federal courts generally may only hear a case if it involves a question of federal law or where diversity of citizenship exists between the parties and the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. §1331. A claim "arises under" federal law when the federal question is presented on the face of the plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

5.      A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)." *Id.*; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997). Such a motion may be decided by the court on one of three bases: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the

complaint, the undisputed facts in the record, and the court's own resolution of disputed facts. *Ynclan v. Dep't of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In a Rule 12(b)(1) motion, the burden of proving that jurisdiction does exist falls to the party asserting jurisdiction. *Ramming*, 281 F.3d at 161.

> **2.   *The Court Lacks Jurisdiction over Defendant Garza Because No Case or Controversy Exists; Plaintiffs' Claims against Defendant Garza Are Not Ripe.***

6.  "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Urb. Devs. LLC v. City of Jackson, Miss.*, 468 F.3d 281, 295 (5th Cir. 2006) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). Further, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Id*. (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

7.  This case is riddled with contingencies and speculation that prohibit judicial review at this time concerning Defendant Garza. The suit does not even allege that any Texas prosecutor, including Defendant Garza, has demonstrated any intent to prosecute any purveyor of cultivated meats whether based in Texas or outside of Texas. The law, as Plaintiff's concede, prohibits sale of the products at issue without regard to point of origin. Plaintiffs simply rely on the novelty of their product and the lack of a current Texas producing company to claim the effect falls discriminatorily on out-of-state industry in violation of the Dormant Commerce Clause.[2] Regardless of any impact on commerce, Defendant Garza has done nothing to suggest she would prosecute cases or collect penalties against Plaintiffs, nor would she do so in a way that would differ from the approach to be taken with any future in-state purveyor of cultivated meats. As

---

[2] Plaintiffs specifically note that their products are part of an "entirely out-of-state industry" and "exclusively based outside of Texas." [ECF 1, ¶¶ 2 & 10].

4

*Motion to Dismiss Plaintiff's Original Complaint*
1301538.1/385.729

addressed below, the language from the Texas law and the role of prosecutorial discretion, make any potential injury attributable to Garza contingent upon future events that are entirely speculative. For these reasons, the *only* claim asserted by Wild Type, and the first claim asserted by UPSIDE, fails for want of jurisdiction and failure to state a claim.[3] [4]

### 3. Plaintiffs Failed to Plead a Causal Connection Between Their Alleged Injury and Any Certain Actions of Defendant Garza.

8. The subject-matter jurisdiction of federal courts is limited to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, (1992). To establish standing, the plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 541–42 (5th Cir. 2022) (quoting *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020)). Specifically, Plaintiffs "must demonstrate 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id*. (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, (2006)).

9. The courts have determined that the plaintiff "bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130). At the preliminary-injunction stage, "the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction." *Id*. (quoting *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."

---

[3] The only Claim for Relief of Wild Type and the First Claim for Relief of UPSIDE is their shared dormant Commerce Clause claim. [ECF 1, p. 36].

[4] Although the arguments herein are divided between want of jurisdiction and failure to state a claim, the arguments in each section may support dismissal under either Rule 12(b)(1) or (6).

*Id.* (quoting *Davis v. Federal Elec. Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)(internal citation omitted). As the Fifth Circuit states, in a class action suit, "for each *named* defendant, at least one named plaintiff must have standing to sue." *Id*. (citing *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (emphasis added); *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012). "Standing to sue one defendant does not, on its own, confer standing to sue a different defendant." *Id*.

10.     Claims against Defendant Garza, in her official capacity, are ostensibly claims against the State and are barred by sovereign immunity and/or governmental immunity. Defendant Garza occupies a constitutionally established position within the Judicial Branch of the State of Texas. *See* Tex. Const. art. V, sec. 21; Tex. Code of Crim. Proc. Art. 2.01 (providing that each district attorney shall represent the State in all criminal cases in the district courts of their district). As a State of Texas official, Defendant Garza is generally entitled to sovereign immunity from suit. State sovereign immunity generally precludes suits against state officials in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity [] should be treated as suits against the State."); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020).

11.     In *Mi Familia Vota v. Ogg*, the Fifth Circuit described the *Ex parte Young* "guideposts" upon which at least some of UPSIDE's Supremacy Claims for Relief rely to search for an immunity waiver. [ECF 1, pp.44 & 52]. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157). The standard set forth in *Ogg* to fit within the narrow *Ex parte Young* exception to immunity are: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented,' i.e., a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official,

6

through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law." *Id*. at 325 (quoting Tex. All. for Retired Ams., 28 F.4th at 672). "Mere authority" over whether to bring criminal charges is not enough to invoke the *Ex parte* Young exception. *Id*. at 326. The challenged law "does not mandate that [prosecuting] attorneys prosecute every case under every criminal statute no matter the specific facts." *Fund Texas Choice v. Deski*, No. 1:22-CV-859-RP, 2025 WL 2020052, at *9 (W.D. Tex. May 23, 2025) (unpublished). Further, "[t]he primary duty of an attorney representing the state … is not to convict but to see that justice is done." *Id*. (citing Tex. Code. Crim. Proc. art. 2A.101).

12.     On the demonstrated willingness prong, the "prior or contemporaneous affirmative acts of the named official" must show some willingness to enforce. *Id*. (quoting *Ogg* at 330). A failure to disavow enforcement is not enough. *Id*. at *10. The are no allegations of any position taken by Defendant Garza concerning the challenged law. No constraint exists to fulfil the third guidepost either. Because Defendant Garza has "neither enforced the challenged statute against anyone nor threatened to do so," there has been no constraint. *Id*. (citing *Ogg* at 332). "'[F]ear of prosecution' stemming from 'the existence of the challenged statutes coupled with [the defendant's] authority to prosecute criminal cases, is insufficient to show constraint.'" *Id*. Even if the Court somehow found standing exists, Plaintiff's Complaint provides insufficient facts addressing these guideposts to state a claim.

### III. MOTION TO DISMISS 12(b)(6)

A.     **Failure to State a Claim**

    *1.*     **Iqbal *and* Twombly *Standards Require Dismissal of Defendant Garza.***

13.     The federal pleading standard does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the complaint must include sufficient information, accepted as true, to state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678–79; *see also Twombly*, 550 U.S. 544, 555. This plausibility standard asks for more than a sheer possibility that a defendant acted unlawfully. *See Iqbal*, 556 U.S. at 678–79; *see also Atkins v. City of Chicago*, 631 F.3d 823, 831–32 (7th Cir. 2011). "The fact that the allegations undergirding a [plaintiff's] claim **could be true** is no longer enough to save it. [T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." *Atkins*, 631 F.3d at 831–32 (emphasis added).

14.     To survive a motion to dismiss, the complaint must present sufficient facts that would allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. While the court must take all allegations contained in the complaint as true, mere conclusory statements will not suffice. *Id.* Further, the court is not required to accept as true any legal conclusions couched as factual allegations. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### 2. *Plaintiffs Failed to State Any Viable Claim Against Defendant Garza in Her Official Capacity.*

15.  Personal involvement in an alleged constitutional violation is an essential element of a § 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658. At least two of Plaintiff UPSIDE's Claims for Relief depend on Section 1983 as the tool for vindication of an alleged right under the Supremacy Clause. [ECF 1, pp. 39 & 48]. To survive a motion to dismiss, Plaintiffs must provide sufficient facts that illustrate the defendant's personal participation in the alleged wrong. *See Thompson*, 709 F.2d at 382. Here there is no allegation of wrongdoing by Defendant Garza. Plaintiffs seek only prospective and declaratory relief against her, but there are no allegations she has or is about to deprive anyone of any constitutional interests. [ECF 1, ¶ 25].

16.  Plaintiffs sued Defendant Garza exclusively because of a perceived duty to pursue civil penalties and criminal prosecutions under the Texas Health and Safety Code. Some of the cited language states a district, county, or city attorney may be responsible to "initiate and prosecute *appropriate* proceedings…." Tex. Health & Safety Code Ann. § 431.060(a) (emphasis added). [ECF 1, ¶ 25]. Plaintiffs also cite language suggesting a requirement that Defendant Garza collect a civil penalty, citing the Health and Safety Code at § 431.0585(a). [ECF 1, ¶ 25]. What Plaintiffs neglect to inform the Court is that any such collection presupposes the state agency has forgone the option to pursue an administrative penalty itself and chosen not to have the Attorney General collect the civil penalty instead. Even if the "collection" provision is an independent proceeding, separate from the detailed administrative hearing process, such action could not be undertaken without a request to Defendant Garza from the Department of State Health Services. As such, if this Court finds the challenged law constitutionally infirm, it need only enjoin the appropriate co-defendant official from making any such referral to Defendant Garza. Moreover, the cited section

9

appears to be an action in collection, suggesting the action must stem from a request to "collect" such penalty already assessed by the State Agency. Also, there is no reason to single out the Travis County Attorney, because "venue for a suit brought under this section is in the city or county in which the violation occurred <u>or</u> in Travis County." *Id*. at § 431.0585(d).[5] If the Court extends any extraordinary or declaratory relief, it should only apply to those State agents who might trigger the enforcement process, not those who might *potentially* become involved.

17. As for the other provision addressing potential referral of matters, the seemingly ministerial language that a prosecutor to whom such a referral is made "shall initiate" proceedings "without delay" cannot make Plaintiffs' speculative injury certain or even likely. Instead, the alleged mandate to prosecute only applies to "appropriate" proceedings. As such, like a referral by any other agency, Defendant Garza would have to make an independent assessment of the "report" of violation and use her discretion to decide whether any, and what type, of proceeding would be "appropriate" based on the available evidence. "Discretionary authority to act, on its own, is insufficient to give rise to a particular duty to act." *Ogg*, 105 F.4th at 327. The Texas Legislature could not deprive Defendant Garza of her prosecutorial discretion without violating the separation of powers provisions under the state constitution. The power given to district and county attorneys

---

[5] Given the most recent legal holdings and statues, forcing the Travis County Attorney to defend the constitutionality of such a statute in federal civil court on behalf of the entire state of Texas weighs against equitable interests and judicial economy and would place an undue financial burden on the citizens of Travis County. This is true because if Plaintiffs were to prevail and obtain a declaration the statute is unconstitutional, they could pursue attorneys' fees for the litigation of the constitutionality of the statute against a local government. Forcing the citizens of Travis County to bear that expense places an undue burden on the citizens of Travis County because Travis County did not pass the state law; state legislators passed it. Any payment of attorneys' fees should be paid by the state itself for passing an unconstitutional law and the costs should be spread equally amongst state taxpayers. This is especially true in the current legal environment post-*Ogg*, where prosecutorial discretion may be subject to a form of erosion through enactment of state statutes. *See Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024).

includes the power not only to prosecute cases but also to decide which cases should not be prosecuted. *State v. Stephens*, 664 S.W.3d 293, 297 (Tex. Crim. App. 2022) (citing *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) ("Both Texas and federal courts recognize that prosecutors have broad discretion in deciding which cases to prosecute. Thus, '[i]f the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion.'") (quoting *State v. Malone Serv. Co.*, 829 S.W.2d 763, 769 (Tex. 1992)) (emphasis added)). Given all these variables surrounding the mere possibility of referral to Defendant Garza to initiate appropriate proceedings, it should be obvious that Plaintiffs lack standing to assert a claim against her and are unable to state a plausible claim against her under the present circumstances.

18.     For liability to attach to a defendant in an action to enforce rights under the United States Constitution, brought under 42 U.S.C. § 1983, they must have either directly or indirectly subjected the injured party to a constitutional violation while acting under color of state law. *See* 42 U.S.C. § 1983. No such allegations appear in this suit. As such, UPSIDE has failed to state a claim for express federal preemption under the ingredients or facilities clauses of the PPIA, their second and forth claims for relief that invoke Section 1983.

19.     Moreover, Plaintiffs' assumptions about their products, the applicable authorities, and the text of the federal and state laws at issue belie their claims and prohibit any equitable relief. Put simply Plaintiffs' cultivated meat products are not the same products as those with which they wish to compete. In overturning a Texas Law related to prohibition of certain wine imports, the Fifth Circuit dealt with wine shipments to Texas consumers directly from out-of-state vintners. *Dickerson v. Bailey*, 336 F.3d 388 (5th Cir. 2003). The TABC regulations at issue in that case treated the exact same product (wine) differently based solely on its origin out of state. If Plaintiffs'

products were the same product as traditionally produced protein, they would not be able to claim the niche market their pleading so proudly describes. What the Texas Legislature has called "cell-cultured protein" in the challenged law is not the same product as "traditionally" raised meats, or Plaintiffs would never have gone into business in the first place. As such, Plaintiffs have failed to state a dormant Commerce Clause claim.

20. Plaintiff UPSIDE's claims about the supremacy of the PPIA provisions regarding ingredients and facilities are equally misleading and misplaced. Assuming without debating, at this stage, the supremacy of the PPIA, as plainly stated in the Complaint, the ingredients clause prohibits states from imposing ingredient requirements on articles from an establishment regulated by the PPIA. [ECF 1, ¶ 243]. But the Texas law at issue does not insist on the addition of an ingredient to cultivated chicken products, nor does it require the removal of certain ingredients in cultivated chicken during production. The law simply says cell-cultured protein may not be sold in Texas for human consumption for the next two years, when this ban is written to expire. Tex. Health & Safety Code Ann. § 431.02105.

21. Similarly, Plaintiff UPSIDE's reliance on the facilities clause in the PPIA, establishes no conflict, and certainly none justifying declaratory or injunctive relief against a lone county attorney who *might* one day, possibly, be asked to collect a penalty assessed by a state agency, or who might, *in her discretion*, find a case referred by a state agency appropriate for prosecution. The facilities clause of the PPIA prohibits states from imposing requirements concerning the premises, facilities, and operations of establishments covered by the PPIA. [ECF 1, ¶ 243]. The challenged Texas law in no way attempts to regulate the facilities of producers of cultivated chicken.

22. Perhaps recognizing this lack of facility interference by SB 261, Plaintiffs cite the Supreme Court's observation that a state ban on the sale of meat produced in a way disapproved of by the

12

state would run afoul of preemption because "that would make a mockery" of the FMIA's (in that case) preemption provision. *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 463–64 (2012). But the sales ban in *Harris* was specifically directed at the means of production (butchering nonambulatory pigs) and criminalized the sale of such meats in California. "The idea—and the inevitable effect—of the provision is to make sure that slaughterhouses remove nonambulatory pigs from the production process (or keep them out of the process from the beginning)…." *Id*. at 464. "The [California] sales ban regulates how slaughterhouses must deal with non-ambulatory pigs on their premises." *Id*. The challenged two-year Texas ban, on the other hand, seeks to control no aspect of how cell-cultured protein is produced, nor to regulate the facilities, premises, or operations of its manufacturers. In *Harris*, the clear goal of the California law was to modify the specific way slaughter operations were conducted on the premises and in the facilities of the Association members.

23. Again, Defendant Garza need not establish the constitutionality of the challenged law, she can simply show Plaintiffs' assertions on their face do not state a plausible claim against her, which she has done. Notably, courts rely heavily on the presumption of the constitutionality of state laws. *Davis v. Dep't of Lab. & Indus. of Washington*, 317 U.S. 249, 257 (1942). Plaintiffs have failed to state any claims upon which relief can be granted or any within the jurisdiction of this Court, and any claims asserted against Defendant Garza should be dismissed with prejudice.[6]

---

[6] In their Complaint, Plaintiffs have only asserted official capacity claims against the Defendant Garza for prospective injunctive and declaratory relief. Accordingly, in the interest of conservation of the resources of the parties and the Court, Defendant Garza does not brief the affirmative defenses of absolute prosecutorial immunity, qualified immunity, not raise other defenses against individual capacity claims or claims for monetary damages, but she reserves such right.

## IV. CONCLUSION

24. This Court lacks subject matter jurisdiction over Plaintiffs' claim related to any perceived potential for enforcement actions by Defendant Garza. No such claim is ripe, and Plaintiff's lack standing to pursue any relief against Defendant Garza. Moreover, Plaintiffs have failed to offer any factual allegations to support a plausible claim against Defendant Garza. They have failed to plead any casual link between any alleged injury and the actions of Defendant Garza. Plaintiffs failed to state a claim upon which relief can be granted because Plaintiffs have not and cannot offer well-pled allegations to support any of their claims against Travis County Attorney Delia Garza. Therefore, the Court should dismiss Plaintiffs' claim against Defendant Garza.

WHEREFORE, PREMISES CONSIDERED, Defendant Delia Garza prays that her motion be granted, that Plaintiffs' claim(s) be dismissed with prejudice, and for such relief, both general and special, at law or in equity, to which they are justly entitled.

Respectfully submitted,

**DELIA GARZA**
County Attorney, Travis County
P. O. Box 1748
Austin, Texas 78767
Telephone:   (512) 854-9513
Facsimile:   (512) 854-4808

By: /s/ *Todd A. Clark*
TODD A. CLARK
State Bar No. 04298850
Todd.Clark@traviscountytx.gov
ELAINE CASAS
State Bar No. 00785750
Elaine.Casas@traviscountytx.gov
SUSANA NARANJO-PADRON
State Bar No. 24105688
Susana.Naranjo-Padron@traviscountytx.gov
Assistant County Attorneys
**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day 29th day of September, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to each attorney who has made an appearance in this case.

/s/ *Todd A. Clark*
TODD A. CLARK