UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

WILD TYPE, INC. D/B/A WILDTYPE and
UPSIDE FOODS, INC.,

     *Plaintiffs,*

v.

JENNIFER A. SHUFORD, in her official capacity
as the Commissioner of The Texas Department of
State Health Services; CECILE ERWIN YOUNG,
in her official capacity as the executive
commissioner of The Texas Health and Human
Services Commission; KEN PAXTON, in his
official capacity as the Attorney General of Texas;
and DELIA GARZA, in her official capacity as the
County Attorney of Travis County,

     *Defendants.*

CIVIL ACTION NO. 1:25-CV-01408-ADA-ML

---

## STATE DEFENDANTS' MOTION TO DISMISS

---

TABLE OF CONTENTS

Page

Table of Authorities .................................................................................................................. iii

Background ........................................................................................................................................1

Legal Standard .............................................................................................................................. 2

Argument ....................................................................................................................................... 2

    I.   Plaintiffs' claim for alleged violations of the dormant Commerce Clause should be dismissed........................................................................................................................3

        A.  The dormant Commerce Clause .................................................................................3

        B.  Plaintiffs' dormant Commerce Clause claims are not viable under § 1983. ................. 4

        C.  Plaintiffs have not plausibly alleged that SB 261 operates with a discriminatory effect. ................................................................................................................... 6

    II.  Upside's preemption claims should be dismissed. ........................................................... 9

        A.  Upside's two claims for preemption under § 1983 fail as a matter of law. ................... 9

        B.  Upside lacks a private right of action to pursue its PPIA Preemption claims. .............. 9

        C.  Even if it had a private right of action to pursue its PPIA claims, Upside failed to plausibly allege that the PPIA preempts SB 261. ....................................................... 11

Prayer ........................................................................................................................................... 17

Certificate of Service.................................................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ............................................................................................ 10, 11

*Allstate Ins. Co. v. Abbott*,
    495 F.3d 151 (5th Cir. 2007) ............................................................................ 3, 6, 7

*Armour & Co. v. Ball*,
    468 F.2d 76 (6th Cir. 1972) .................................................................................... 14

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) .................................................................................................. 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 2, 12

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*,
    870 F.3d 1140 (9th Cir. 2017) ("*Canards I*") ................................................. 13, 14

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*,
    33 F.4th 1107 (9th Cir. 2022) (*Canards II*) ........................................................ 14

*Beleno v. Lakey*,
    306 F. Supp. 3d 930 (W.D. Tex. 2009) ................................................................. 4

*Bell v. Health-Mor, Inc.*,
    549 F.2d 342 (5th Cir. 1977) ................................................................................... 5

*CANarchy Craft Brewery Collective, LLC v. Texas Alcoholic Beverage Comm'n*,
    514 F. Supp. 3d 911 (W.D. Tex. 2021) ................................................................... 7

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ................................................................................................... 12

*Davis v. Passman*,
    442 U.S. 228 (1979) ..................................................................................................... 5

*Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*,
    476 F.3d 326 (5th Cir. 2007) ("*Empacadora*") ............................................... 14, 16

*Ex parte Young*,
    209 U.S. 123 (1908) ..................................................................................................... 3

*Exxon Corp. v. Governor of Md.*,
    437 U.S. 117 (1978) ...................................................................................................... 8

*Freedom From Religion Found., Inc. v. Mack*,
    4 F.4th 306 (5th Cir. 2021) ........................................................................... 5, 6, 9, 10

*Freedom From Religion Found., Inc. v. Mack*,
    49 F.4th 941 (5th Cir. 2022) ...................................................................................... 6

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ................................................................................................... 10

*Harris Cnty. Texas v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) ................................................................................... 10

*Harrison v. Young,*
  48 F.4th 331 (5th Cir. 2022)..................................................................................... 4

*Hooks v. Landmark Indus., Inc.,*
  797 F.3d 309 (5th Cir. 2015) .................................................................................... 2

*Johansen v. Trico Marine Int'l, Inc.,*
  No. CV H-07-3767, 2008 WL 11390861 (S.D. Tex. Aug. 29, 2008) ......................... 6

*Maria S. v. Garza,*
  No. 1:13-CV-108, 2015 WL 4394745 (S.D. Tex. July 15, 2015) ............................... 6

*Melot v. Bergami,*
  970 F.3d 596 (5th Cir. 2020).................................................................................... 6

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown,*
  567 F.3d 521 (9th Cir. 2009) ................................................................................... 8

*Nat'l Meat Ass'n v. Harris,*
  565 U.S. 452 (2012) ..............................................................................................15

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) .................................................................................................. 4

*Plotkin v. IP Axess Inc.,*
  407 F.3d 690 (5th Cir. 2005)................................................................................... 2

*Quern v. Jordan,*
  440 U.S. 332 (1979) ................................................................................................ 4

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001)............................................................................... 2, 4

*Salazar v. S. San Antonio Indep. Sch. Dist.,*
  953 F.3d 273 (5th Cir. 2017) ..................................................................................10

*Seminole Tribe of Florida v. Florida,*
  517 U.S. 44 (1996) .................................................................................................11

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ..................................................................................................5

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas,*
  588 U.S. 504 (2019) ................................................................................................3

*United States v. Texas,*
  97 F.4th 268 (5th Cir. 2024) ..................................................................................10

*Upside Foods, Inc v. Simpson,*
  No. 4:24CV316-MW/MAF, 2024 WL 5274483 (N.D. Fla. Oct. 11, 2024) ...... 14, 16

*Upside Foods, Inc. v. Simpson,*
  No. 4:24cv316-MW/MAF, 2025 U.S. Dist. LEXIS 85699 (N.D. Fla. Apr. 25, 2025)...........11

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n,*
  945 F.3d 206 (5th Cir. 2019) ...................................................................................3

*White Buffalo Ventures, LLC v. Univ. of Texas at Austin,*
  420 F.3d 366 (5th Cir. 2005)..................................................................................12

*Will v. Mich. Dep't of State Police,*
  491 U.S. 58 (1989) ..................................................................................................5

*Williams v. Wingrove*,
    153 F.4th 455 (5th Cir. 2025) ...................................................................12

*Wilson v. Birnberg*,
    667 F.3d 591 (5th Cir. 2012) .....................................................................5

## STATUTES

2024 Ala. SB 23 (enrolled) .............................................................................1

2025 Miss. HB 1006 § 1 (enrolled) ................................................................1

21 U.S.C. § 467c ...................................................................................... 9, 11

21 U.S.C. § 467e ...................................................................................... 2, 13

21 U.S.C. § 52 .............................................................................................13

42 U.S.C. § 1983 ...........................................................................................5

Cal. Penal Code § 599f ...............................................................................15

Fla. Stat. § 500.452 ................................................................................ 1, 16

Tex. Const. art. IV, § 1 ................................................................................ 4

Tex. Health & Safety Code § 431.002(5-a) .............................................. 1, 7

Tex. Health & Safety Code § 431.02105(a) ...................................... passim

## RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................... 2

Fed. R. Civ. P. 12(b)(6) ............................................................................... 2

Defendants Ken Paxton, in his official capacity as the Attorney General of Texas, Jennifer A. Shuford, in her official capacity as the Commissioner of the Texas Department of State Health Services, and Cecile Erwin Young, in her official capacity as the Executive Commissioner of the Texas Health and Human Services Commission (collectively State Defendants) file this Motion to Dismiss Plaintiffs Wild Type, Inc. (Wildtype) and Upside Foods, Inc.'s (Upside) (collectively Plaintiffs) Original Complaint for Declaratory and Injunctive Relief (ECF No. 1) and would respectfully show the Court as follows.

### Background

During the 2025 legislative session, the Texas Legislature enacted SB 261, which prohibits the sale of "cell-cultured protein" in Texas. Tex. Health & Safety Code §§ 431.002(5-a), 431.02105(a). SB 261 defines "cell-cultured protein" as "a food product derived from harvesting animal cells and artificially replicating those cells in a growth medium to produce tissue." *Id.* § 431.002(5-a). The prohibition applies equally to all cell-cultured protein products regardless of whether this product is manufactured in Texas or elsewhere. *Id.* §§ 431.002(5-a), 431.02105(a). SB 261 is temporary and, absent further legislative action, will expire on September 1, 2027. *Id.* § 431.02105(c). Bans on the sale of cell cultured protein are not Texas-specific. Several other states, including Mississippi, Alabama, and Florida, have passed similar laws banning lab-grown meat protein products. *See*, *e.g.*, 2025 Miss. HB 1006 § 1 (enrolled); 2024 Ala. SB 23 (enrolled); Fla. Stat. § 500.452.

Plaintiffs—who are both manufacturers of cell-cultured protein product—took issue with SB 261, and the reason is simple: it hurts their respective bottom lines. Wildtype grows and sells cell-cultured salmon protein products, and Upside grows and sells cell-cultured chicken protein products. ECF 1 ¶ 4. Based on their inability to sell their products in Texas after SB 261's passage, they sued several state officials and one county official for alleged violations of both the dormant Commerce Clause and the Supremacy Clause of the United States Constitution.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden to prove jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

## Argument

Plaintiffs assert five claims for relief. First, Wildtype and Upside argue that SB 261 violates the dormant Commerce Clause and seek relief under "42. U.S.C. § 1983, *Ex parte Young*, and this Court's inherent equitable power." ECF 1 at 36–39. Upside alone brings four additional claims, arguing that two sections of the Poultry Products Inspection Act ("PPIA"), the "Ingredients Clause"[1] and the "Facilities Clause,"[2] preempt SB 261. ECF No. 1 ¶¶ 210–323. Upside brings

---

[1] 21 U.S.C. § 467e ("Marking, labeling, packaging, or ingredient requirements . . . in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia") ("Ingredients Clause").

[2] 21 U.S.C. § 467e ("Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory or the District of Columbia") ("Facilities Clause").

each preemption claim separately and under both § 1983 and *Ex parte Young*. *See* ECF No. 1 ¶ 237–323. Each of Plaintiffs' claims is deficient as a matter of law and should be dismissed.

I. **Plaintiffs' claim for alleged violations of the dormant Commerce Clause should be dismissed.**

Plaintiffs contend that SB 261 violates the dormant Commerce Clause under two theories: 1) that SB 261 was enacted with a discriminatory purpose, and 2) that SB 261 operates with a discriminatory effect. ECF No. 1 ¶¶ 218–19. At the outset, to the extent Plaintiffs bring their claims under § 1983, such claims are improper as a matter of law. What remains are claims brought under the equitable cause of action in *Ex parte Young*, 209 U.S. 123 (1908). Plaintiffs have not pled facts sufficient to show that SB 261 operates with a discriminatory effect, nor can they.[3] The Court should therefore dismiss Plaintiffs' dormant Commerce Clause claim brought under the discriminatory effects theory.

A. **The dormant Commerce Clause**

The dormant Commerce Clause is a controverted doctrine rooted in a storied history of case law. *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514–18 (2019) (describing the controversial history of the dormant commerce clause). Finding its roots in the negative space between the Commerce Clause and states' power, the dormant Commerce Clause restricts states from enacting protectionist trade barriers which tend toward economic Balkanization and bring the union's commerce to the "oppressed and degraded state" which existed at the adoption of the present Constitution. *Id.* at 516–17. Consequently, courts have developed a rather convoluted legal framework that prohibits states from "discriminat[ing] against interstate commerce either facially, by purpose, or by effect." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206, 213 (5th Cir. 2019) (quoting *Allstate Ins. Co.*, 495 F.3d at 160). bear the burden of proving that a state violated the dormant Commerce Clause. *Allstate Ins. Co.*, 495 F.3d at 160 ("The burden of

---

[3] This motion will not address Plaintiffs' theory that SB 261 was enacted with a discriminatory purpose, as that is a fact-intensive inquiry. *See Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 n.26 (5th Cir. 2007) (implement the *Arlington Heights* factors when determining whether a specific statute was enacted with a discriminatory purpose).

establishing that a challenged statute has a discriminatory purpose under the Commerce Clause falls on the party challenging the provision.") (citing *Hughes v. Oklahoma,* 441 U.S. 322, 336 (1979)). Here, Plaintiffs fail to carry this burden in several ways.

### B. Plaintiffs' dormant Commerce Clause claims are not viable under § 1983.

Plaintiffs bring dormant Commerce Clause claims under both § 1983 and, separately, *Ex parte Young*. ECF No. 1 at 213. Irrespective of the viability of Plaintiffs' claims under *Ex parte Young*, Plaintiffs' § 1983 dormant Commerce Clause claims fail as a matter of law and should be dismissed.

### 1. The Court lacks subject matter jurisdiction to decide Plaintiff's § 1983 claims.

The Eleventh Amendment deprives a federal courts of jurisdiction to hear suits against the State of Texas or its officials, regardless of the relief sought, unless sovereign immunity is expressly waived. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121 (1984). Neither Congress nor the State of Texas has voluntarily waived Texas's sovereign immunity for § 1983 claims. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Sovereign immunity extends to state officials sued in their official capacities. *Pennhurst*, 465 U.S. at 109 n.17 (state officials are entitled to sovereign immunity when they are sued to prevent "action that could be taken . . . only in their official capacity"). It is Plaintiffs' burden to prove jurisdiction exists. *Ramming*, 281 F. 3d at 161. Plaintiffs have not carried that burden.

State Defendants are government officials entitled to sovereign immunity when sued in their official capacities. Tex. Const. art. IV, § 1 (establishing the Attorney General as an executive officer); *see Harrison v. Young*, 48 F.4th 331, 338 (5th Cir. 2022) (discussing whether an exception to the HHSC Commissioner's sovereign immunity applies); *Beleno v. Lakey*, 306 F. Supp. 3d 930, 942 (W.D. Tex. 2009) (dismissing claims against the DSHS Commissioner as barred by sovereign immunity). Because Plaintiffs sue State Defendants in their official capacities and have not identified a waiver of sovereign immunity, besides Plaintiffs' separate cause of action under *Ex parte Young* addressed below, Plaintiffs' §1983 claims are barred by sovereign immunity. As such,

this Court lacks subject matter jurisdiction over Plaintiffs' § 1983 dormant Commerce Clause claim and it should be dismissed.

### 2. Plaintiffs lack a cause of action under § 1983 for violations of the dormant Commerce Clause.

The plaintiff bears the burden of establishing a right to bring his suit. *See e.g., Davis v. Passman,* 442 U.S. 228, 238–40 (1979); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *see also Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) ("[T]he plaintiff bears the burden of plausibly alleging a viable cause of action."). Claims that have not been brought under an appropriate cause of action must be dismissed. *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 345 (5th Cir. 1977); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (holding a cause of action is a non-jurisdictional requirement). Plaintiffs' § 1983 claims therefore must be dismissed because § 1983 does not properly provide Plaintiffs with a cause of action.

The text of § 1983 is clear: the re-dress it authorizes is only available against a "person." *See* 42 U.S.C. § 1983. Since state officials, like State Defendants here, are not "persons" within the meaning of the statute, § 1983 does not create a right of action that allows individuals to sue state personnel for violations of their rights. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).

While there is a line of caselaw permitting suits under § 1983 against state officials in their official capacity, a recent Fifth Circuit opinion indicates that this is incorrect. In *Freedom From Religion Found., Inc. v. Mack*, the Fifth Circuit found that "[s]uits against the State under 42 U.S.C. § 1983 are doubly dismissible because the State is not a 'person' under that statute." 4 F.4th 306, 311 (5th Cir. 2021) (citation omitted). Indeed, "the only way to bring an official-capacity claim against an officer of the State is to do so under the *equitable cause of action* recognized in *Ex parte*

*Young.*" *Id.* (emphasis added). This is where the Court's analysis should begin and end. *Id.* at 312.[4] As such, while Plaintiffs may still bring suit under the equitable cause of action recognized under *Ex parte Young*, § 1983 does not provide Plaintiffs with a cause of action to pursue their dormant Commerce Clause Claims and they should be dismissed.

### C. Plaintiffs have not plausibly alleged that SB 261 operates with a discriminatory effect.

"A state statute impermissibly discriminates only when it discriminates between similarly situated in-state and out-of-state interests." *Allstate Ins. Co.*, 495 F.3d at 163. Notwithstanding Plaintiffs' please to the contrary, ECF 1 ¶ 17, SB 261 is not facially discriminatory against out-of-state commerce. It merely prohibits the sale of cell-cultured meat products in Texas, much like any ban on the sale of any other product within the State. *See* Tex. Health & Safety Code § 431.02105(a). It provides no benefits to in-state market participants to the detriment of out-of-state market participants. Plaintiffs' claim that SB 261 facially violates their rights is therefore dead on arrival.

Plaintiffs' next argument—that SB 261 operates with a discriminatory effect—is also lacking. They claim SB 261 violates the dormant Commerce Clause because it "was enacted with the purpose, and has the effect, of discriminating against competition coming exclusively from out of state." ECF No. 1 ¶ 12. But even assuming *arguendo* that SB 261 was enacted in part to benefit Texas's conventional agricultural industry, it does not follow that SB 261 discriminates against out-of-state commerce in violation of the dormant Commerce Clause. Plaintiffs do not plead facts that close this gap. They therefore fail to state a plausible claim for relief under the discriminatory effects theory and their claim must therefore be dismissed.

---

[4] Thought this portion of the Fifth Circuit's ruling was vacated by a subsequent panel, *see Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 948 n.4 (5th Cir. 2022), it is nonetheless persuasive and should guide this Court's analysis. *See Melot v. Bergami*, 970 F.3d 596, 599 n.11 (5th Cir. 2020) ("thoughtful [circuit court] opinion" persuasive even though it had been "vacated as moot on rehearing"); *Maria S. v. Garza*, No. 1:13-CV-108, 2015 WL 4394745, at *10 n.10 (S.D. Tex. July 15, 2015) ("Thus although the Fifth Circuit's *Bivens* analysis in *Hernandez* was later vacated, the Court may rely on the [its] delineation of *Bivens* law in *Hernandez* to assist in the analysis of Plaintiffs' claim."); *Johansen v. Trico Marine Int'l, Inc.*, No. CV H-07-3767, 2008 WL 11390861, at *8 (S.D. Tex. Aug. 29, 2008) ("reasoning underlying" a vacated "decision remains persuasive authority").

To violate the dormant Commerce Clause, a law must discriminate against out-of-state commerce in favor of *similarly situated* intrastate commerce. *Allstate Ins. Co.*, 495 F.3d at 163. Plaintiffs twist the dormant Commerce Clause to condemn *all* laws that inhibit out-of-state businesses from participating in a state's commerce when the purpose of the law is to promote a certain industry. ECF No. 1 ¶¶ 218–19. In so doing, Plaintiffs skip two crucial steps. First, Plaintiffs incorrectly assume, without providing justification, that cell-cultured protein and conventional meat are similarly situated products and that Plaintiffs are similarly situated to traditional agriculture companies. Second, because Plaintiffs make this assumption, Plaintiffs conclude that legislation treating them differently is discriminatory for purposes of the dormant Commerce Clause. It is not.

The Fifth Circuit has defined discriminatory effect under the dormant Clause more narrowly than other circuits. *CANarchy Craft Brewery Collective, LLC v. Texas Alcoholic Beverage Comm'n*, 514 F. Supp. 3d 911, 920 (W.D. Tex. 2021), *aff'd sub nom. CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Comm'n*, 37 F.4th 1069 (5th Cir. 2022) (citing *Wal-Mart Store, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206, 219 (5th Cir. 2019)). It analyzes dormant Commerce Clause claims based on a statute's "'effect on similarly situated business entities.'" *Id.* (citing *Wal-Mart Store, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206, 219 (5th Cir. 2019)) (defining similarly situated companies as those which both produce over 225,000 barrels per year, *i.e.*, those to which the law at issue applies).

Plaintiffs are not similarly situated to conventional agricultural businesses. In fact, cell-cultured protein and conventional meat are not similarly situated products. Cultivated protein is a nascent industry that (allegedly) grows "genuine animal meat" in a from animal cells in a bioreactor. ECF No. 1 ¶¶ 27, 31, 41. Plaintiffs claim that this product has the "appearance and culinary attributes" of conventional meat without being conventional meat. ECF 1 ¶ 59. But it is not similarly situated to conventional meat. This is best illustrated by the fact that SB 261 only applies to cell-cultivated meat, not conventional meat. Tex. Health & Safety Code §§ 431.002(5-a), 431.02105(a). There is a distinct difference between the two products.

Plaintiffs have also failed to plead facts sufficient to show that they are similarly situated to conventional agricultural businesses. The closest they get to addressing this glaring omission is their conclusory statement that "[c]ultivated meat products compete with conventional meat products . . . ." ECF No. 1 ¶ 224. But simply "competing in the same market is not sufficient to conclude that entities are similarly situated." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 527 (9th Cir. 2009) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997)). Plaintiffs must therefore plead facts that would show *how* they are similarly situated to conventional agricultural companies. The Supreme Court addressed this issue in *Exxon Corp. v. Governor of Md.*, 437 U.S. 117 (1978), where it "distinguished between the entities based on their business structures, holding that a state may prevent businesses with certain structures or methods of operation from participating in a retail market without violating the dormant Commerce Clause." *Brown*, 567 F.3d at 527 (citing *Exxon Corp.*, 437 U.S. at 127).

Plaintiffs give no information other than conclusory claims that they compete in the same market as traditional agricultural companies. Their product is different from conventional meat and likely appeals to entirely different groups of consumers. They make no showing that they have a similar business structure. Presumably, Plaintiffs would need to hire employees with vastly different backgrounds and qualifications. They might have different storage needs for their respective products. Plaintiffs almost undoubtedly need different facilities and have different logistical priorities. All these factors would affect whether Plaintiffs would be considered "similarly situated", and they have provided Defendants (and the Court) with nothing. *See Exxon Corp.*, 437 U.S. at 127.

Plaintiffs, as a result, have not pled facts sufficient to state a claim under their discriminatory effects theory. *See, e.g.*, *Exxon Corp.*, 437 U.S. at 127; *Brown*, 567 F.3d at 527; *CANarchy Craft Brewery Collective, LLC*, 514 F. Supp. 3d at 920 (defining narrowly what constitutes a similarly situated product). And because they have failed to plead these facts, the Court should dismiss their claim under this theory.

II. **Upside's preemption claims should be dismissed.**

Upside raises four additional, separate preemption claims under the PPIA. ECF No. 1 ¶¶ 237–323. Specifically, Upside claims two provisions of the PPIA, the Ingredients Clause and the Facilities Clause, preempt SB 261. *Id.* It asserts a separate preemption claim for each clause under both § 1983 and the *Ex parte Young* to total four distinct preemption claims. *Id.* Each of the four claims fails as a matter of law and should be dismissed for several reasons. First, Upside's § 1983 preemption claims are legally insufficient for the same reasons as Plaintiffs' claims under § 1983 for alleged violations of the dormant Commerce Clause. Second, claims to enforce alleged violations of the PPIA can only be brought by and in the name of the United States, effectively foreclosing any private right of action Upside may have to bring a preemption claim. And third, the PPIA simply does not preempt SB 261.

A. **Upside's two claims for preemption under § 1983 fail as a matter of law.**

The deficiencies in Plaintiffs' § 1983 dormant Commerce Clause claim apply with equal force to Upside's § 1983 preemption claims. Claims for injunctive relief against state officers in their official capacity must be brought under the equitable cause of action in *Ex parte Young*. *See Mack*, 4 F.4th at 311– 12. The Court should therefore dismiss Upside's § 1983 preemption claims and focus the remainder of its analysis on Upside's *Ex parte Young* preemption claims.[5]

B. **Upside lacks a private right of action to pursue its PPIA Preemption claims.**

Thee PPIA's enforcement provision gives the United States exclusive authority to bring a claim to enforce the PPIA. *See* 21 U.S.C. § 467c ("All proceedings for the enforcement or to restrain violations of [the Poultry and Poultry Products Inspection Act] shall be by and in the name of the United States.") ("Enforcement Provision"). The Enforcement Provision entirely forecloses any possibility of a private right of action. Upside's PPIA preemptions claims are therefore meritless.

---

[5] Assuming *arguendo* the Court does not find the reasoning in *Mack* persuasive, Upside's § 1983 preemption claims must still be dismissed for the reasons set forth below.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The only "remedies available are those 'that Congress enacted into law.'" *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). "Statutory intent . . . is determinative of whether there was congressional intent to create not just a private right but also a private remedy." *Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 279 (5th Cir. 2017). Without "statutory intent," "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286–87. To that end, neither the Declaratory Judgment Act nor the Supremacy Clause create or confer a private right of action. *See United States v. Texas*, 97 F.4th 268, 275 (5th Cir. 2024) ("[T]he Supremacy Cause does not create a cause of action."); *Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015) ("the Declaratory Judgment Act . . . does not create an independent right of action"). So, Upside must look elsewhere to find a private right of action. Unsurprisingly, it turns to § 1983 and *Ex parte Young*. ECF 1 ¶¶ 237–323. But neither provide Upside with a private right of action.

First, and assuming that the Court is unconvinced that § 1983 is not the proper vehicle for a suit against a state official in his official capacity, § 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (emphasis in original). As a result, "[o]ne cannot go into court and claim a 'violation of § 1983' — for § 1983 by itself does not protect anyone against anything." *Id.* (emphasis removed) (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979)). Upside point to no individual right that the PPIA confers. Instead, it simply seeks wield the PPIA—a federal regulatory framework—as a club to bash any laws that they deem to be an obstruction to their business. For that reason, Plaintiffs § 1983 claims should be doubly dismissed.

Second, while *Ex parte Young* can provide an equitable cause of action for certain claims, *see Mack* 4. F.4th at 311–312, Plaintiffs cannot utilize that equitable cause of action where Congress has explicitly foreclosed on it. *See Alexander*, 532 U.S. at 290. In evaluating whether Congress

intended to foreclose equitable relief, courts must accord the entire statute its "fairest reading" and should not "presume[] . . . such enforcement" is available. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). An "affirmative statement by Congress that equitable relief [is] unavailable" is not necessary. *Id.* (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 75 (1996)). Therefore, relief is not available under *Ex parte Young* where Congress has created a remedial framework for the enforcement of a particular right, and such framework is reserved only for the federal government. *See Seminole Tribe of Florida*, 517 U.S. at 47–48. In in such a case, sovereign immunity is also applicable. *Id.* at 76.

Here, Congress created an exclusive enforcement mechanism that is reserved solely for the United States. 21 U.S.C. § 467c. The PPIA provides explicitly that "[a]ll proceedings for the enforcement or to restrain violation of this chapter shall be by and in the name of the United States." 21 U.S.C. § 467c. This enforcement provision reserves any right of action for the federal government and therefore forecloses private actions to enforce the PPIA, whether under § 1983 and under *Ex parte Young*. *See Alexander*, 532 U.S. at 290.

Unsurprisingly, when Upside brought a near-identical challenge to the Florida statute that banned cell-cultured meat products, a Florida District Court agreed with this position, dismissing Upside's PPIA preemption claims for want of a private right of action *See Upside Foods, Inc. v. Simpson*, No. 4:24cv316-MW/MAF, 2025 U.S. Dist. LEXIS 85699, at *13–16 (N.D. Fla. Apr. 25, 2025) (holding the PPIA's enforcement provision foreclosed Upside's preemption claims under § 1983 and in equity). The Court should do the same here; Upside lacks a private right of action to bring its preemption claims and they must be dismissed for both failure to state a claim and lack of subject matter jurisdiction.

## C. Even if it had a private right of action to pursue its PPIA claims, Upside failed to plausibly allege that the PPIA preempts SB 261.

Upside incorrectly claims two sections of the Poultry Products Inspection Act ("PPIA"), the Ingredients Clause and the Facilities Clause, expressly preempt SB 261. ECF 1 at 39, 44, 48, 52 (claiming ***only*** express preemption). "The power to preempt state law is 'an extraordinary

power in a federalist system[.]'" *Williams v. Wingrove*, 153 F.4th 455, 464 (5th Cir. 2025) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)). This is especially so when "the preemption arguments advanced would preempt the state′s traditional ability to regulate 'matters of health and safety' under their 'historic police powers.'" *Id.* (quoting *De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)). Until recently, the scope of preemption under the PPIA was a novel issue in this circuit. *Id.* at 463. But the Fifth Circuit has now clarified this issue, stating that "the domain of the PPIA is food safety as well as any behavior that would cause 'adulteration of product.'" *Id.* At this juncture, Upside has the burden of pleading a plausible claim of express preemption. *Iqbal*, 556 U.S. at 678. Even taking all Upside's factual assertions as true, Upside has not plausibly pled that the PPIA preempts SB 261.

"The doctrine of preemption stems from the Supremacy Clause, which gives federal law precedence over a conflicting state law." *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005) (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992)). "Although a court should begin with the expression provided by Congress, it must also 'identify the domain expressly pre-empted.'" *Id.* (quoting *Cipollone,* 505 U.S. at 517). "Preemption radically alters the balance of state and federal authority, so the Supreme Court has historically refused to impose that alteration interstitially. The Court has expressed this principle as a presumption against preemption of state law." *Id.* (quoting *Cipollone,* 505 U.S. at 517–18). "Supremacy Clause analysis is classic "tie goes to the state" jurisprudence, and the existence of an express preemption provision does not always plainly demarcate what the federal law expressly preempts." *Id.* "Congress′ enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone*, 505 U.S. at 517.

**1.  The Ingredients Clause does not preempt SB 261.**

Upside claims SB 261 runs afoul of the Ingredients Clause because it prohibits cell-cultured-protein "solely on the basis that the product contains or is made from cultivated chicken cells" which is an ingredient "permissible for use in poultry food products under the PPIA[.]"

ECF No. 1 ¶ 271. Therefore, Upside argues, SB 261 imposes an ingredient requirement not in the PPIA. ECF No. 1 ¶ 276. This makes little sense.

The plain language of SB 261 is clear. SB 261 bans a type of product: cell-cultured protein. Tex. Health & Safety Code § 431.02105(a) (prohibiting the sale of cell-cultured protein); § 431.002(5-a) (defining cell-cultured protein as "a food *product* derived from harvesting animal cells and artificially replicating those cells in a growth medium to produce tissue."). Even accepting as true Plaintiffs' assertion that cell-cultured protein is "genuine meat," that does not change the fact that cell-cultured protein is a product distinct and separate from "conventional meat." *See* ECF No. 1 ¶¶ 32–40 (describing the differences between cultivated and conventional meat). Upside too categorizes its cultivated chicken as a "product[.]" ECF No. 1 ¶ 60.

The Ingredients Clause does not prohibit states from banning a type of poultry product. *See* 21 U.S.C. § 467e (prohibiting conflicting or additional ingredient, marking, or labeling requirements); *see also Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1150 (9th Cir. 2017) ("*Canards I*") ("Nothing in the federal law or its implementing regulations limits a state's ability to regulate the *types* of poultry that may be sold for human consumption."). This is true even if the product or the ingredients in the product are approved for sale and regulated by the PPIA and other relevant federal law. *See id.* at 1149–50 (denying plaintiffs' argument that a ban on an ingredient because of how the ingredient was produced is preempted by the PPIA because the PPIA does not mandate particular types of poultry be produced for people to eat). The purpose of the PPIA is to prevent adulterated or misbranded poultry products from burdening interstate commerce, not to prohibit states from regulating what types of poultry products may be sold within their borders. 21 U.S.C. § 52 (stating the purpose of the policy is to prevent adulterated or misbranded products from burdening interstate commerce); *Canards I*, 870 F.3d at 1150 ("The fact that Congress established 'ingredient requirements' for poultry products that *are* produced does not preclude a state from banning products"). Like the PPIA, the Federal Meat Inspection Act "expressly limits states in their ability to govern meat inspection and labeling requirements." *Cf. Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*, 476 F.3d 326, 333 (5th Cir. 2007)

13

("*Empacadora*"). However, "[i]t in no way limits states in their ability to regulate what types of meat may be sold for human consumption in the first place." *Id.*

Courts across the country have rejected with Upside's interpretation of the PPIA's and analogous Ingredients Clauses. *See, e.g., Canards I*, 870 F.3d at 1149–50; *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1117 (9th Cir. 2022) (*Canards II*) (reaffirming the holding in *Canards I* that federal law does not mandate the sale of a poultry product); *Upside Foods, Inc v. Simpson*, No. 4:24CV316-MW/MAF, 2024 WL 5274483, at *6–8 (N.D. Fla. Oct. 11, 2024) (denying Upside's identical preemption claims); *cf. Empacadora*, 476 F.3d at 333 (construing the analogous Federal Meat Inspection Act to not prohibit states from banning certain types of meat for sale); *cf Armour & Co. v. Ball*, 468 F.2d 76, 81–85 (6th Cir. 1972) (holding that a Michigan law that imposed heightened requirements for grade 1 sausage that substantially differed from federal standards was expressly preempted as an ingredient requirement inconsistent with federal law).

Upside claims SB 261 is distinct from laws that prohibit the sale of poultry products because it bans Upside's *product* because of "the way the ingredients were produced" after arrival at a USDA facility, i.e., by culturing the chicken cells in a lab, instead of based on how a chicken was treated prior to slaughter. ECF No. 1 ¶ 273. This is a distinction without a difference. In *Canards I* and *II*, the Ninth Circuit held that regardless of whether the California law constituted a ban on foie gras, it was not expressly preempted by the PPIA. *Canards I*, 870 F.3d at 1149–50; *Canards II*, 33 F.4th at 1117. Upside made the same arguments in *Upside Foods, Inc. v. Simpson* and the Northern District of Florida rejected them for the same reasons. 2024 WL 5274483, at *6–8.

Upside presents this Court with no reason to blaze a new trail and *require* states to permit cell-cultivated protein to be sold within their borders. Upside identifies no federal authority which requires Texas permit the sale of cell-cultivated protein. Nor does Upside identify anything more than the definition of "poultry product" to suggest that Texas must allow cell-cultivated protein as an ingredient in poultry products. As a result, Upside's Ingredient Clause preemption claims fail as a matter of law and must be dismissed.

### 2.  The Facilities Clause does not preempt SB 261.

Upside claims that by preventing Upside from selling its cultivated chicken, which it produces in accordance with federal requirements for poultry facilities, Texas is "substitut[ing] a new regulatory scheme for the one the FSIS uses," and it is therefore imposing a different premises, facilities and operations requirement different to those under the PPIA. ECF No. 1 ¶ 296. This is nonsense. Like Upside's Ingredients Clause argument discussed *supra*, Upside does not identify any federal requirement to which SB 261 adds or from which SB 261 differs besides the fact that it bans the sale of cell-cultivated meat. Thus, like Upside's Ingredient Clause argument, Upside's Facilities Clause argument boils down to whether a sales ban imposes inconsistent requirements on Upside's premises, facilities, or operations. The law is clear. It does not.

To circumvent the host of caselaw marching against it, Upside tries to convince the Court that a ban on selling cell-cultured protein is equivalent to a law regulating how meat producers can treat their animals. ECF 1 ¶ 296. But Upside's reliance on *Nat'l Meat Ass'n v. Harris* is misplaced. 565 U.S. 452 (2012). In *Nat'l Meat Ass'n*, the state imposed a host of requirements inconsistent with federal law on meat producers' operations and used a sales ban to enforce the inconsistent regulatory requirements. *Id.* at 463–46. Unlike the law in *National Meat Ass'n*, SB 261 does not attempt to reach into Upside's facilities and regulate how it produces its product. *Compare* Cal. Penal Code § 599f (criminalizing specific production, transportation, and treatment acts with respect to nonambulatory animals) *with* Tex. Health & Safety Code § 431.02105(a) (prohibiting the sale of cell-cultured protein in Texas). Instead, SB 261 is a pure sales ban on cell-cultured protein. Tex. Health & Safety Code § 431.02105(a). Like the Ingredients Clause, the Facilities Clause does not preempt sales bans.

Upside attempts to distinguish SB 261 from constitutional sales bans, like that in *Empacadora*, by emphasizing that Upside cultivates its cells at official establishments regulated by the PPIA. ECF 1 ¶¶ 318–19. But the location of the cell-cultivation is irrelevant. The location of

the processing had no effect on the holdings in *Empacadora* or *Upside Foods Inc. Empacadora*. 476 F.3d at 333; *Upside Foods, Inc*, No. 2024 WL 5274483, at *7–8.

Moreover, SB 261 does not attempt to regulate *how* Upside cultivates its chicken cells. *See* Tex. Health & Safety Code § 431.02105(a) (containing no regulatory requirements). Like the law in *Empacadora*, SB 261 does not reach into Upside's facilities and tell it how to run its cell-cultivators. *Id.* It merely states that cell-cultivated protein may not be sold in Texas. *Id.* As discussed, *supra*, neither the PPIA nor analogous statutes limit states' abilities to regulate what types of meat products may be sold for human consumption. *Cf. Empacadora*, 476 F.3d at 333. Upside likewise brought this claim in *Upside Foods, Inc v. Simpson* and the Florida federal court summarily rejected it for the reasons above. 2024 WL 5274483, at *7–8. Notably, the Florida statute is broader than SB 261 and expressly prohibits the manufacture and distribution as well as sale of cell-cultivated meat in Florida. Fla. Stat. § 500.452(1) ("It is unlawful for any person to manufacture for sale, sell, hold or offer for sale, or distribute cultivated meat in this state."); Tex. Health & Safety Code § 431.02105(a) ("The offering for sale or sale of cell-cultured protein for human consumption within this state is unlawful and prohibited."). Despite the Florida statute's express ban on manufacturing cell-cultivated protein, the Florida court still found the law was not preempted by the Facilities Clause because in *Empacadora* the Fifth Circuit acknowledged that laws requiring the closing of facilities do not impose additional or different facilities requirements than federal law. *Upside Foods, Inc*, No. 4:24CV316-MW/MAF, 2024 WL 5274483, at *7 (citing *Empacadora*, 476 F.3d at 326). SB 261 does not contain any language that could be construed as an attempt to control Upside's cell-cultivation production processes. Tex. Health & Safety Code § 431.02105(a).

Upside provides no reason this Court should break from decades of precedent holding sales bans are not preempted by the PPIA. As such, even taking all Upside's factual allegations as true, Upside has failed to plausibly plead that the Facilities Clause preempts SB 261.

## Prayer

Defendants Ken Paxton, in his official capacity as the Attorney General of Texas, Jennifer A. Shuford, in her official capacity as the Commissioner of the Texas Department of State Health Services, and Cecile Erwin Young, in her official capacity as the executive commissioner of the Texas Health and Human Services Commission respectfully request the Court dismiss Plaintiffs Wild Type, Inc. and Upside Foods, Inc. claims with prejudice.

Dated: October 26, 2025

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

**ALI M. THORBURN**
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

**BRIAN B. TUNG**
Assistant Attorney General
Texas State Bar No. 24145179
brian.tung@oag.texas.gov

**OFFICE OF THE
ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR STATE DEFENDANTS**

### CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on October 26, 2025, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

Marco Vasquez Jr. (TX Bar No. 24115892)
Arif Panju (TX Bar No. 24070380)
816 Congress Ave., Suite 970
Austin, TX 78701
Phone: (512) 480-5936
Fax: (512) 480-5937
mvasquez@ij.org
apanju@ij.org

Paul M. Sherman (VA Bar No. 73410)*
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
psherman@ij.org

**COUNSEL FOR PLAINTIFFS
WILD TYPE, INC. D/B/A WILDTYPE AND
UPSIDE FOODS, INC.**

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel