## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **WILD TYPE, INC. D/B/A WILDTYPE** AND **UPSIDE FOODS, INC.**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **JENNIFER A. SHUFORD**, in her official capacity as the Commissioner of the Texas Department of State Health Services; **CECILE ERWIN YOUNG**, in her official capacity as the Executive Commissioner of the Texas Health and Human Services Commission; **KEN PAXTON**, in his official capacity as the Attorney General of Texas; and **DELIA GARZA**, in her official capacity as the County Attorney of Travis County, <br><br> *Defendants*. | Civil Action No. <u>1:25-cv-1408-ADA-ML</u> |

## PLAINTIFFS' COMBINED RESPONSE
## TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF CITATIONS .......................................................................................... ii

INTRODUCTION.................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.    Plaintiffs have properly alleged that SB 261 violates the Dormant Commerce Clause.......................................................................................................... 2

        A. Plaintiffs' Dormant Commerce claim is not barred by sovereign immunity ..... 3

        B. Plaintiffs have a cause of action........................................................... 4

        C. Plaintiffs have stated a claim for relief under the Commerce Clause ............... 5

    II.    Plaintiff UPSIDE Foods has properly alleged that SB 261 is preempted under the Poultry Product Inspection Act. ................................................................... 7

        A. UPSIDE has a cause of action............................................................. 8

        B. UPSIDE properly alleged that SB 261 is preempted by the PPIA ................. 10

    III.    Defendant Garza is a proper defendant. ................................................... 14

CONCLUSION...................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................ 17

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ................................................................................................ 9

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*,
    33 F.4th 1107 (9th Cir. 2022) .............................................................................. 13

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
    870 F.3d 1140 (9th Cir. 2017)...................................................................... 8, 9, 12

*Beleno v. Lakey*
    306 F.Supp.3d 930 (W.D. Tex. 2009) ................................................................. 4

*Del Real, LLC v. Harris*,
    966 F. Supp. 2d 1047 (E.D. Cal. 2013),
    *aff'd*, 636 F. App'x 956 (9th Cir. 2016) ............................................................. 9

*Dennis v. Higgins*,
    498 U.S. 439 (1991) .......................................................................................... 4, 5

*Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*,
    476 F.3d 326333 (5th Cir. 2007)........................................................................ 13

*Ex parte Young*,
    209 U.S. 123 (1908)............................................................................ 2, 4, 7, 15

*Freedom From Religion Found., Inc. v. Mack*,
    49 F.4th 941 (5th Cir. 2022) ............................................................................... 5

*Freedom From Religion Foundation, Inc. v. Mack*,
    4 F.4th 306 (5th Cir. 2021) .............................................................................. 4, 7

*Harrison v. Young*
    48 F.4th 331 (5th Cir. 2022)............................................................................... 4

*Healthy Vision Ass'n v. Abbott*,
    138 F.4th 385 (5th Cir. 2025) ........................................................................... 15

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (2024) .................................................................................. 14, 15

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
    584 U.S. 453 (2018) ................................................................................9

*Nat'l Broiler Council v. Voss,*
    44 F.3d 740 (9th Cir. 1994) ....................................................................9

*Nat'l Meat Ass'n v. Harris,*
    565 U.S. 452 (2012)......................................................................... 12, 13

*NextEra Energy Cap. Holdings, Inc. v. Lake,*
    48 F.4th 306 (5th Cir. 2022) ...................................................................7

*Nw. Selecta, Inc. v. Gonzalez-Beiro,*
    145 F.4th 9 (1st Cir. 2025) .......................................................... 8, 10, 14

*Sewell v. Monroe City Sch. Bd.,*
    974 F.3d 577 (5th Cir. 2020) ..................................................................3

*Texas v. U.S. Env't Prot. Agency,*
    132 F.4th 808 (5th Cir. 2025)..................................................................5

*Thompson v. Allstate Ins. Co.,*
    476 F.2d 746 (5th Cir. 1973)...................................................................3

*Turtle Island Foods Inc. v. Abbott,*
    No. 1:23-cv-1032, 2024 WL 5659990 (W.D. Tex. Sept. 23, 2024) ........6, 7

*UPSIDE Foods, Inc. v. Simpson,*
    No. 4:24cv316 (N.D. Fla. Apr. 25, 2025) (Doc. 85)........................ 7, 9, 14

*Valentine v. Collier,*
    993 F.3d 270 (5th Cir. 2021) ..................................................................4

*Williams v. Wingrove,*
    153 F.4th 455 (5th Cir. 2025) ...............................................................14

**Codes, Statutes, and Rules**

21 U.S.C.
    § 467c ................................................................................................. 8
    § 467e.............................................................................9, 10, 11, 12, 13

42 U.S.C.
    § 1983 .......................................................................................2, 4, 5, 7

Tex. Health & Safety Code
§ 431.021 ................................................................................................................15
§ 431.060(a) ...........................................................................................................15
§ 431.0585(a) .........................................................................................................15

Fed. R. Civ. P. 8 ...........................................................................................................6

Fed. R. Civ. P. 12(b)(6) ...............................................................................................5

**Other Authorities**

U.S. Dep't of Agric., FSIS Directive 7800.1, *FSIS Responsibilities in Establishments Producing Cell-Cultured Meat & Poultry Food Products* (June 21, 2023), https://www.fsis.usda.gov/policy/fsis directives/7800.1 ................................................1, 2, 11

## INTRODUCTION

This Court should deny the government's motions to dismiss the complaint filed by Plaintiffs Wild Type, Inc. (Wildtype) and UPSIDE Foods, Inc. (UPSIDE).

First, Wildtype and UPSIDE have alleged a valid claim under the Dormant Commerce Clause. Plaintiffs have alleged facts that, taken for their truth, show that the overriding purpose for the enactment of SB 261 was not to protect public health and safety but to protect Texas's domestic agriculture industry from a new form of innovative, out-of-state competition. Thus, even though SB 261 was written in facially neutral terms, it is subject to heightened scrutiny because it has the purpose or effect of discriminating against interstate commerce. Under that scrutiny, it is the government's rigorous burden to show not only that SB 261 furthers a legitimate non-protectionist interest, but also that Texas has no other alternative in pursuing that interest. The government cannot carry that heavy burden at the motion-to-dismiss stage.

Second, UPSIDE has alleged valid claims that Texas's ban on cultivated meat is expressly preempted under the Poultry Product Inspection Act (PPIA). That law's express preemption provisions do not require a direct conflict between federal and state law. Instead, they prohibit states from imposing any requirements for the ingredients used in poultry products or the "premises, facilities and operations" of USDA inspected "official establishments" that produce poultry products if such requirements are "in addition to, or different than" those made under the PPIA.

Here, USDA has made clear that cultivated poultry products, including UPSIDE's products, are "subject to the same statutory requirements, regulations, and [USDA Food Safety and Inspection Service (FSIS)] oversight authority" as conventional poultry products. *See* U.S. Dep't of Agric., FSIS Directive 7800.1, *FSIS Responsibilities in Establishments Producing Cell-Cultured Meat & Poultry Food Products* (June 21, 2023), https://www.fsis.usda.gov/policy/fsis

1

directives/7800.1. These include binding requirements governing which ingredients can be used in poultry products (including UPSIDE's cultivated poultry products) and the operations of the official establishments at which such products are produced (including UPSIDE's official establishment).

Texas's SB 261, however, directly prohibits UPSIDE from using certain ingredients in its poultry products that it would otherwise be allowed to use under the USDA's federal ingredient requirements—specifically, cultivated chicken cells—thus imposing ingredient requirements that are "in addition to, or different than" applicable ingredient requirements issued under the PPIA. SB 261 also reaches into UPSIDE's USDA-inspected official establishment by dictating which manufacturing processes it may and may not use to produce its products—specifically, cell cultivation and harvest processes—again imposing requirements that are "in addition to, or different than" applicable federal requirements. The PPIA denies the state that authority.

## ARGUMENT

### I.    Plaintiffs have properly alleged that SB 261 violates the Dormant Commerce Clause.

Defendants argue that Plaintiffs' Dormant Commerce claim should be dismissed because (1) to the extent Plaintiffs' claim arises under § 1983 it is barred by sovereign immunity and Plaintiffs lack a cause of action, and (2) Plaintiffs have failed to properly allege that SB 261 has a discriminatory effect.

What is most notable about Defendants' arguments, however, is what they do not contain. While arguing that Plaintiffs cannot bring their Dormant Commerce claim under § 1983, the State Defendants do not challenge Plaintiffs' ability to bring that claim under *Ex parte Young*. State MTD at 4 ("Irrespective of the viability of Plaintiffs' claims under *Ex parte Young*, Plaintiffs' § 1983

dormant Commerce Clause claims fail as a matter of law and should be dismissed."). And while arguing that Plaintiffs have not properly pleaded that Texas SB 261 has a discriminatory effect on interstate commerce, the State Defendants explicitly decline to address "plaintiffs' theory that SB 261 was enacted with a discriminatory purpose, as that is a fact-intensive inquiry." State MTD at 3 n.3.

These omissions alone are reason enough to deny the State Defendants' motion to dismiss Plaintiffs' Dormant Commerce claim. The purpose of a motion to dismiss is to test the sufficiency of the claims, not to winnow down the arguments that might be made in support of those claims or to decide the merits. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) ("A motion to dismiss for failure to state a claim concerns the 'formal sufficiency of the statement of the claim for relief,' not a lawsuit's merits."); *see also Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973) ("A complaint is sufficient if the plaintiff is entitled to relief under any legal theory.").

The State Defendants do not challenge this Court's authority to hear and resolve Plaintiffs' Dormant Commerce claim; they simply argue that just some of Plaintiffs' arguments in support of that claim are unavailing. The State Defendants' motion is thus improper and should be denied on those grounds. Still, Plaintiffs will explain below why, even if this Court were to consider them, Defendants' arguments are meritless.

### A.  Plaintiffs' Dormant Commerce claim is not barred by sovereign immunity.

The State Defendants first argue that this Court lacks jurisdiction over Plaintiffs' Commerce Clause claim, suggesting that the claim is barred by sovereign immunity. State MTD at 4–5. This argument is meritless.

It is well-established that plaintiffs may vindicate their rights under the Commerce Clause by bringing suit under § 1983. *See Dennis v. Higgins*, 498 U.S. 439 (1991) (holding that the Commerce Clause secures federal rights enforceable under § 1983). And it is equally well-established that such lawsuits are not barred by sovereign immunity "where a state actor is sued only in his or her official capacity and only for prospective relief." *Valentine v. Collier*, 993 F.3d 270, 282 (5th Cir. 2021). That is what Plaintiffs have done here.

The cases on which the State Defendants rely confirm that sovereign immunity does not apply here. The Fifth Circuit's recent decision in *Harrison v. Young*, for example, held that a prospective claim brought under § 1983 against state officials was not barred by sovereign immunity. 48 F.4th 331, 337–39 (5th Cir. 2022). Similarly, the court in *Beleno v. Lakey* expressly held that "[p]laintiffs' claims brought against the individual defendants in their official capacities under 42 U.S.C. § 1983" could move forward, even though claims against state *agencies* were barred by sovereign immunity. 306 F.Supp.3d 930, 940 (W.D. Tex. 2009). Thus, this Court can hear Plaintiffs' claim.

### B. Plaintiffs have a cause of action.

Next, the State Defendants argue that "§ 1983 does not properly provide Plaintiffs with a cause of action." State MTD at 5. Notwithstanding the decades of case law permitting suits under § 1983 against state officials in their official capacity, the State Defendants point to a since-vacated portion of the Fifth Circuit motions panel's decision in *Freedom From Religion Foundation, Inc. v. Mack*, suggesting that such claims may only be brought under *Ex Parte Young* and not under § 1983. *See* 4 F.4th 306, 31–13 (5th Cir. 2021).

But as the State Defendants recognize, that portion of the panel's ruling was expressly vacated by a later merits panel. State MTD at 6 n.4 (citing *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 948 n.4 (5th Cir. 2022)); *see also Texas v. U.S. Env't Prot. Agency*, 132 F.4th 808, 824–25 (5th Cir. 2025) ("[W]e have consistently stated that 'opinions and orders of a panel with initial responsibility for resolving motions filed in an appeal are not binding on the later panel that is assigned the appeal for resolution.'"). And though the State Defendants argue that this Court should consider the vacated language for its persuasive value, this Court cannot do so here, because the vacated language is directly contrary to binding Supreme Court precedent. As noted previously, the Supreme Court in *Dennis* expressly held that plaintiffs may bring lawsuits under § 1983 against state officials to enforce their rights under the Dormant Commerce Clause. 498 U.S. at 443–51. Thus, Plaintiffs have a cause of action under § 1983 and in equity.

### C. Plaintiffs have stated a claim for relief under the Commerce Clause.

As noted above, the State Defendants have not argued that Plaintiffs' Dormant Commerce Claim should be dismissed in its entirety, only that this Court should reject Plaintiffs' legal theory that Texas SB 261 has a discriminatory effect on interstate commerce. But even if this were not an improper use of Rule 12(b)(6), the well-pleaded allegations of the complaint are more than sufficient to establish Plaintiffs' claim under this theory.

The essence of the State Defendants' objection is that "Plaintiffs have . . . failed to plead facts sufficient to show that they are similarly situated to conventional agricultural businesses," and that "Plaintiffs must . . . plead facts that would show *how* they are similarly situated to conventional agricultural companies." State MTD at 8.

This argument is meritless. Under Federal Rule of Civil Procedure 8, Plaintiffs were required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." They have done so, specifically alleging, among other things, that:

- They "create food products that replicate the taste, texture, and appearance of conventional meat." Complaint ¶ 5;

- "Cultivated meat can serve as a substitute for conventional meat." *Id.* ¶ 34

- "If it were legal for Wildtype and UPSIDE to sell their products in Texas, those products would compete economically with the state's conventional seafood and poultry industries." *Id.* ¶ 165

- "If it were legal for Wildtype and UPSIDE to sell their products in Texas, some consumers would choose to buy and consume their cultivated products rather than consume conventional seafood or poultry." *Id.* ¶ 166

- "SB 261 operates with discriminatory effect to benefit in-state agricultural businesses at the expense of out-of-state competition by shielding in-state agricultural businesses from out-of-state businesses that otherwise would compete with in-state conventional meat businesses." *Id.* ¶ 219.

These allegations are more than enough to create the plausible inference that Plaintiffs' products compete with conventional meat in interstate commerce and that SB 261 has a discriminatory effect on that commerce. *See Turtle Island Foods Inc. v. Abbott*, No. 1:23-cv-1032, 2024 WL 5659990 (W.D. Tex. Sept. 23, 2024) (holding that similar allegations made by producers of plant-based meat alternatives stated a valid dormant commerce claim). Indeed, the Northern District of Florida, considering a substantially identical challenge to Florida's ban on cultivated meat—brought by Plaintiff UPSIDE—held that UPSIDE stated a valid claim under the Commerce

Clause. *See* Order on Mot. to Dismiss, *UPSIDE Foods, Inc. v. Simpson*, No. 4:24cv316 (N.D. Fla. Apr. 25, 2025) (Doc. 85).[1]

The cases the State Defendants rely on do not counsel otherwise. Indeed, all were decided on the merits, not on motions to dismiss. That is not at all surprising. As the Fifth Circuit has held, "[discriminatory-]effects-focused claims are just as, if not more, fact dependent" than discriminatory-purpose focused claims. *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 327 (5th Cir. 2022). Plaintiffs have made plausible allegations that SB 261 has a discriminatory effect on interstate commerce and that claim should proceed to discovery.

## II. Plaintiff UPSIDE Foods has properly alleged that SB 261 is preempted under the Poultry Product Inspection Act.

Defendants' motions to dismiss Plaintiff UPSIDE's federal preemption claims also fail. As with the State Defendants' arguments against Plaintiffs' Dormant Commerce claims, the State Defendants here repeat their argument that UPSIDE's claims under Section 1983 fail because claims against state officials may only be brought under *Ex parte Young*. This argument is based on the same vacated reasoning from the Fifth Circuit motions panel's ruling in *Freedom From Religion Foundation* and should be rejected for the reasons discussed above. *Supra* at 5.

Besides that, the State Defendants argue (1) that UPSIDE does not have a cause of action because only the United States government may bring a lawsuit alleging that a state law is

---

[1] Defendant Garza argues in a single paragraph that Plaintiffs' claim fails because cultivated meat is "not the same products as 'traditionally' raised meats." Garza MTD at 11–12. Defendant Garza cites no authority to support this argument and it is belied by rulings such as *Turtle Island* and *UPSIDE Foods*.

preempted under the PPIA, and (2) that UPSIDE has not plausibly alleged that SB 261 is preempted under the PPIA. As explained below, these arguments fail.[2]

### A. UPSIDE has a cause of action.

The State Defendants argue that UPSIDE's preemption claims under the Poultry Product Inspection Act are foreclosed by 21 U.S.C. § 467c, which provides that "[a]ll proceedings for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States." This argument misunderstands that provision and the nature of UPSIDE's express preemption claims.

Section 467c does not bar UPSIDE's claim because a state's enactment of a law that is expressly preempted under the PPIA is not a "violation" of the PPIA in the relevant sense of that term. Read in context, § 467c can only be understood to prohibit private lawsuits that allege a violation of the PPIA's substantive provisions. Tyson cannot sue Perdue alleging that the latter failed to comply with some regulatory provision of the PPIA. But UPSIDE is not suing a competitor. Nor is it suing a state on the grounds that there was some action the state was required to take under the PPIA that the state failed to perform properly. Instead, it is suing to enjoin the threatened enforcement of a state law that violates the Supremacy Clause. And federal courts have repeatedly heard such cases under the PPIA. Indeed, *every* lawsuit that has ever been brought to challenge a state law as preempted under the PPIA has been brought by a private party and not the United States.[3]

---

[2] Defendant Garza also argues that UPSIDE's preemption claims should be dismissed, but her discussion does not substantively add to the State Defendants'. Garza MTD at 12–13.

[3] *See Nw. Selecta, Inc. v. Gonzalez-Beiro*, 145 F.4th 9 (1st Cir. 2025); *Association des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1150 (9th Cir.

The existence of these lawsuits—which are inexplicable under the State Defendants' view—is no mystery. They are straightforward applications of the general rule that "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

UPSIDE acknowledges that the Northern District of Florida reached a contrary conclusion in *UPSIDE Foods, Inc. v. Simpson*, No. 4:24cv316 (N.D. Fla. Apr. 25, 2025) (Doc. 85). With due respect to that court, that ruling is based on a misunderstanding of the nature of express preemption provisions like the PPIA's. As the Supreme Court has explained, though the language of an express preemption like § 467e "might appear to operate directly on the States," "it is a mistake to be confused by the way in which a preemption provision is phrased." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478 (2018). Rather than acting as commands to the states, such provisions "confer[] on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." *Id.* at 478–79.

In short, when a state enacts a law that is expressly preempted by the PPIA it violates regulated parties' *rights*, but it does not violate the PPIA. The relief granted to the regulated party is not a punishment meted out to the state under the PPIA; it is a declaration that the state's law cannot be enforced. That is the traditional way in which claims of express federal preemption are handled, and it is the way this Court should handle UPSIDE's claim here.

---

2017); *Nat'l Broiler Council v. Voss*, 44 F.3d 740, 743 (9th Cir. 1994); *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047 (E.D. Cal. 2013), *aff'd*, 636 F. App'x 956, 957 (9th Cir. 2016).

**B. UPSIDE properly alleged that SB 261 is preempted by the PPIA.**

The PPIA establishes a regime of express federal preemption. As alleged in the complaint, two of its provisions are relevant here.

The first forbids state efforts to regulate the "premises, facilities and operations of any official establishment" regulated under the PPIA in a manner that exceeds or differs from the federal requirements:

> Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of paragraph (b) of section 460 of this title, if consistent therewith, with respect to any such establishment.

21 U.S.C. § 467e.

The second forbids state efforts to regulate the marking, labeling, packaging, or ingredient requirements for articles prepared in any official establishment regulated under the PPIA in a manner that likewise exceeds or differs from the federal requirements:

> Marking, labeling, packaging, or ingredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under this chapter . . . .

*Id.*

By their terms, neither of these express preemption provisions requires that there be a conflict between state and federal law before a state requirement will be held preempted. All that is required to trigger preemption is that the state requirements be "in addition to, or different than" those imposed under federal law. *See Nw. Selecta*, 145 F.4th at 16 (holding that a Puerto Rico

requirement for the unloading of poultry that was missing from the PPIA was necessarily "in addition to, or different than" the PPIA's requirements).

UPSIDE has properly alleged claims under both preemption provisions. As alleged in the Complaint, UPSIDE's facility is an "official establishment" under the PPIA and its cultivated chicken product is an "article[] prepared at [an] official establishment in accordance with the requirements of the PPIA," 21 U.S.C. § 467e; Complaint ¶¶ 94–95. UPSIDE has also alleged that the USDA, acting under the authority of the PPIA, has issued a directive clarifying that cultivated poultry food products are "subject to the same statutory requirements, regulations, and FSIS oversight authority as meat and poultry food products derived from slaughter" and that "establishments that produce cells for cell-cultured meat or poultry food products may distribute the raw harvested cells in commerce or process the harvested cells into finished products that contain ingredients, such as spices, flavorings, binders, or other ingredients." Complaint ¶ 71 (citing U.S. Dep't of Agric., FSIS Directive 7800.1, *FSIS Responsibilities in Establishments Producing Cell-Cultured Meat & Poultry Food Products* (June 21, 2023), https://www.fsis.usda.gov/sites/default/files/media_file/documents/7800.1.pdf). This same directive provides that ingredients used in cultivated meat and poultry products "must be considered safe and suitable by FSIS" and "[i]ngredients listed as approved for meat in [certain current USDA regulations and directives] may be used in cell-cultured meat food products, and ingredients listed as approved for poultry may be used in cell-cultured poultry food products . . . ." *Id.*

In other words, the USDA has established that cultivated poultry cells may be used as an ingredient in finished poultry products, that products containing those cells may be sold in

interstate commerce, and that the agency's broader regulatory framework governing the lawful use of ingredients in poultry products applies to cultivated poultry products. The only remaining questions, then, are whether UPSIDE has alleged that Texas has enacted ingredients or facilities requirements that are "in addition to, or different than" the federal requirements.

Plainly it has. "Ingredient requirements" refer to "the physical components that comprise a poultry product." *Association des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1147–48 (9th Cir. 2017). Here, USDA has authorized the use of UPSIDE's cultivated cells as ingredients (i.e., "physical components") in poultry products. Despite this, Texas forbids UPSIDE from using this same ingredient in preparing poultry products in its official establishment. Thus, SB 261 is expressly preempted under the "ingredients" clause of 21 U.S.C. § 467e.

For similar reasons, UPSIDE has properly alleged that SB 261 is also preempted under the PPIA's "Premises, Facilities and Operations" provision, which prohibits states from imposing "[r]equirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter." 21 U.S.C. § 467e. The Supreme Court has expressly examined the Federal Meat Inspection Act's identical clause, holding that it "sweeps widely." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459 (2012). The Court has also held that a state cannot avoid this clause "just by framing [its law] as a ban on the sale of meat produced in whatever way the State disapprove[s]," for "[t]hat would make a mockery of the FMIA's preemption provision." *Id.* at 464.

Here, the PPIA's analogous provision applies straightforwardly to UPSIDE and its chicken product. By preventing UPSIDE from manufacturing, distributing, and selling cultivated chicken that is produced in accordance with federal requirements for poultry facilities, Texas "reaches

into" UPSIDE's federally regulated facility and "substitutes a new regulatory scheme for the one the FSIS uses." *Id.* at 460, 467.

Simply put, under the PPIA, an official establishment is permitted to receive part of a poultry carcass—its cells—and cultivate those cells for use in human food. Texas's law, however, reaches into the official establishment after it has received those cells and restricts how they may be processed: They may be processed in any manner permitted under federal law except cell cultivation. Thus, SB 261 imposes "[r]equirements . . . with respect to premises, facilities and operations of any establishment at which inspection is provided under [the PPIA], which are in addition to, or different than those made under [the PPIA]." Id. at 460, 467 (cleaned up); 21 U.S.C. § 467e. And just as in *National Meat Ass'n*, Texas cannot avoid preemption simply by "framing [its law] as a ban on the sale of meat produced in [a] way the State disapprove[s]." 565 U.S. at 464.

Seeking to escape these conclusions, the State Defendants point to cases involving bans on the production of foie gras and the slaughtering of horses for human consumption. State MTD at 12–16. But these cases are distinguishable because they dealt with animal husbandry practices or with the question of which animals may be slaughtered, both issues that fall outside the USDA's jurisdiction. Thus, in California's foie gras litigation, the Ninth Circuit held that the PPIA did not preempt a state law that prohibited the sale of duck or goose liver from animals that had been force-fed while on the farm. *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107 (9th Cir. 2022). Similarly, in *Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*, the Fifth Circuit upheld a Texas law that forbade the slaughter of horses for human consumption, ensuring that horses would not be brought to USDA-regulated official establishments in the first place. 476 F.3d 326, 333 (5th Cir. 2007).

13

The State Defendants argue that SB 261 similarly merely bans a "type of product." State MTD at 13. But this argument misses the mark. Texas has not banned the slaughter or processing of chickens. Instead, it has identified a type of federally lawful post-slaughter poultry processing (cell cultivation) that produces a federally lawful poultry ingredient (cultivated chicken cells). All of the activities that make UPSIDE subject to SB 261 take place within USDA-regulated official establishments. All of them are permitted to occur in USDA-regulated official establishments. Yet Texas bans the sale of the resulting products. That ban goes to the heart of the USDA's regulatory authority, and it is far more burdensome and intrusive than other requirements that federal courts have held expressly preempted. *See Nw. Selecta*, 145 F.4th at 16 (holding that requirement that territorial inspectors be present for unloading of poultry at official establishments was expressly preempted); *see also Williams v. Wingrove*, 153 F.4th 455, 463 (5th Cir. 2025) (holding that the PPIA's "declaration of policy, bolstered by the focus of the FSIS regulations, makes it clear that the domain of the PPIA['s express preemption provisions] is food safety as well as any behavior that would cause 'adulteration of product'").[4]

### III.    Defendant Garza is a proper defendant.

Although Defendant Garza briefly discusses whether Plaintiffs have stated claims for relief, the bulk of her motion to dismiss is devoted to arguing why she is not a proper defendant here. Citing the Fifth Circuit's recent decision in *Mi Familia Vota v. Ogg*, 105 F.4th 313 (2024), Defendant

---

[4] UPSIDE acknowledges that the Northern District of Florida reached the contrary conclusion in *UPSIDE Foods, Inc. v. Simpson*, No. 4:24cv316 (N.D. Fla. Apr. 25, 2025) (Doc. 85). That ruling is wrong for the reasons explained above. Further, that court's conclusion that UPSIDE did not have a likelihood of success on the merits of its preemption claims is on appeal to the Eleventh Circuit, which heard oral argument on November 4.

Garza argues that she is not amenable to suit under *Ex parte Young* because she has no more than a "general duty to see that the laws of the state are implemented" and lacks "a demonstrated willingness to exercise that duty."

Defendant Garza's argument fails. First, unlike in *Mi Familia Vota*, here Defendants Garza has more than a general duty to enforce the law. Instead, she is "specially charged with the duty to enforce" SB 261. 105 F.4th at 325. SB 261 provides that a "county . . . attorney to whom the department or a health authority reports a violation of this chapter, *shall* initiate and prosecute appropriate proceedings without delay." Tex. Health & Safety Code § 431.060(a) (emphasis added). Similarly, under SB 261, at the request of the Texas Department of State Health Services, (1) a "county . . . attorney *shall* institute an action in district court to collect a civil penalty from a person who has violated Section 431.021." *Id.* § 431.0585(a) (emphasis added). As the Fifth Circuit has clarified following *Mi Familia Vota*, "[t]he emphasis should be on '*shall*,' which indicates that however much discretion [a government defendant] may have as to the details, enforcement of the statute is mandatory." *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025).

Nor is Garza an improper defendant merely because she has not "expressed any intent to pursue any civil or criminal action against Plaintiffs" under SB 261. Garza MTD at 1. As the Fifth Circuit held in *Healthy Vision*, a willingness to enforce a newly enacted statute can be inferred from the "specific and relevant duty" to enforce that statute, which, as just shown, Defendant Garza has. 138 F.4th at 399. Plaintiffs have also "further plausibly allege[d] that they are in fact compelled and constrained by this state of affairs" "because of their reasonable anticipation of [SB 261's] enforcement" by Defendant Garza. *Id.* Thus, Garza is a proper defendant under *Ex Parte Young*.

**CONCLUSION**

This Court should deny Defendants' motions to dismiss and allow this case to proceed to discovery.


Dated: November 10, 2025                    Respectfully submitted,

                                            /s/ Paul M. Sherman
                                            Paul M. Sherman (DC Bar No. 497308)*
                                            INSTITUTE FOR JUSTICE
                                            901 North Glebe Road, Suite 900
                                            Arlington, VA 22203
                                            Telephone: (703) 682-9320
                                            Email: psherman@ij.org

                                            *Admitted *Pro Hac Vice*
                                            *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on November 10, 2025, I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys

of record.

/s/ Paul M.Sherman
Paul M. Sherman (DC Bar No. 497308)
