UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WILD TYPE, INC. D/B/A WILDTYPE and UPSIDE FOODS, INC.,<br><br>   *Plaintiffs*,<br><br>v.<br><br>JENNIFER A. SHUFORD, in her official capacity as the Commissioner of The Texas Department of State Health Services; CECILE ERWIN YOUNG, in her official capacity as the executive commissioner of The Texas Health and Human Services Commission; KEN PAXTON, in his official capacity as the Attorney General of Texas; and DELIA GARZA, in her official capacity as the County Attorney of Travis County,<br><br>   *Defendant.* | CIVIL ACTION NO. 1:25-CV-01408-ADA-ML |

## STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

This Court should grant State Defendants' motion to dismiss for several reasons. *First*, Plaintiffs have not stated a plausible claim for relief for their dormant Commerce Clause claims. *Second*, UPSIDE's preemption claims are expressly foreclosed by the Poultry Products Inspection Act (PPIA). *Third*, even if the PPIA does not expressly foreclose UPSIDE's preemption claims, such claims are facially deficient and should be dismissed.

ARGUMENT

### I. Three of Plaintiffs' four dormant Commerce Clause claims should be dismissed.

**1.** While grouped together as one "mega-claim", Plaintiffs effectively try to bring four distinct causes of action under the dormant Commerce Clause: 1) a discriminatory intent claim under § 1983, 2) a discriminatory intent claim under *Ex parte Young*, 3) a discriminatory effects

claim under § 1983, and 4) a discriminatory effects claim under *Ex parte Young*. ECF 1 at ¶¶ 210–36. The Court should dismiss three of these four claims outright.

That State Defendants seek only partial relief is not a basis for the Court to deny their motion to dismiss in its entirety. *See, e.g.*, *Watsky v. Williamson County,* No. 1:21-cv-00374-RP, 2024 WL 2420749, at *1–2 (W.D. Tex. May 23, 2024) (concerning a partial motion to dismiss). There is no requirement that a motion to dismiss must attempt to dismiss all a plaintiff's causes of action or else the motion will fail to dismiss any. *See* Fed. R. Civ. P. 12(b).

Likewise, Plaintiffs cannot shield each of their four individual dormant Commerce Clause causes of action from dismissal by bundling them into a mega-claim. *Cf. Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 769 (9th Cir. 1986) ("A plaintiff will not be allowed to conceal the true nature of a complaint through 'artful pleading.'"). "A legal claim is distinct from a legal theory. While a cognizable claim is what opens the courthouse door, a good theory is what lets the plaintiff emerge a victor." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 348 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 414 (2024). Although Plaintiffs repeatedly refer to their "Dormant Commerce claim" as if it were a single claim, ECF 25 at 7, their complaint asserts four separate causes of action based on the dormant Commerce Clause. Each cause of action, taken alone, "would open the courthouse door[.]" *Id.* The Court must therefore consider them independently. *Id.*

**2.** Sovereign immunity bars Plaintiffs' § 1983 dormant Commerce Clause claims, but not Plaintiffs' *Ex parte Young* dormant Commerce Clause claims. The interplay between these two principles is somewhat convoluted, and caselaw addressing that interplay is, at best, inconsistent. Begin with § 1983. It functions as a vehicle for a plaintiff to seek redress for violations of a right granted to him by the Constitution or federal law. *See Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 700–701 (1978). A § 1983 claim may only be brought against a "person[.]" 42 U.S.C. § 1983. Neither a state nor a state official sued in his official capacity are a "person" for the purposes of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

But in an interesting wrinkle to this area of jurisprudence, the Supreme Court has noted that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10. This statement is curious, most notably because the cases cited in support of this conclusion rely on *Young* to shoehorn a § 1983 claim into existence. *See id.*

Why is this curious? Notably, *Young* does two distinct things. First, it functions as a way around sovereign immunity. *Ex parte Young*, 209 U.S. 123, 159–60 (1908). And second, it provides an equitable cause of action for plaintiffs seeking equitable relief against a state official. *Id.* at 165–66. Neither of the two functions of *Young* fit into § 1983 jurisprudence. Considering the latter first, if *Young* were its own cause of action—one which accomplishes the same goals as a § 1983 official capacity suit—it would be redundant. Nor does *Young*'s sovereign immunity waiver fit within § 1983 jurisprudence. It does not magically confer personhood upon a state. And so even if sovereign immunity were otherwise inapplicable, § 1983 would not apply. The reasoning in the now vacated[1] opinion in *Mack* comports with this reasoning. *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306 (5th Cir. 2021). If a plaintiff wants equitable relief against a state—*i.e.* compelling a state officer to do or not do something—he must go through *Young. Id.* at 311–12.

Plaintiffs' framing of their preemption claims supports the understanding that § 1983 and *Ex parte Young* are distinct claims. ECF 1 at 39–56 (bringing their § 1983 and *Ex parte Young* preemption claims under separate claim headings). There would be no purpose for them to bring separate claims under § 1983 and *Young* otherwise. And their cited authority is consistent with this logic. At the very least, Plaintiffs do not directly rebut the principle that § 1983 and *Young* are separate vehicles and should be treated as such. ECF 25 at 9. In *Harrison v. Young*, for example, the court's analysis focused specifically on whether "*Ex Parte Young* allow[ed]" the suit in question and the Court's entire discussion centered on whether *Ex Parte Young* applied, not § 1983.

---

[1] Plaintiffs point to the fact that *Mack* was vacated by the merits panel as a reason to disregard it. ECF 25 at 10. But they disregard the fact that the merits panel explicitly left this issue "open for later consideration." *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 948 n.4 (5th Cir. 2022) (citing *Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017)).

48 F.4th 331, 337–39 (5th Cir. 2022). Similarly, in *Valentine v. Collier*, the Court cites *Ex parte Young* when discussing how certain claims for prospective relief may proceed against state officials. 993 F.3d 270, 282 n.20 (5th Cir. 2021). Neither *Dennis v. Higgins* nor *Beleno v. Lakey* urge differently. *Dennis*, 498 U.S. 439, 443–51 (1991) (addressing whether the Commerce Clause created a right enforceable by § 1983); *Beleno*, 306 F.Supp.3d 930, 940–41 (W.D. Tex. 2009) (permitting § 1983 claims to proceed without explanation and separately analyzing other claims under *Ex parte Young*).

    **3.**    Plaintiffs' discriminatory effects claims are doubly dismissible. To be entitled to relief under the dormant Commerce Clause, a plaintiff must plead facts showing a statute impermissibly discriminates against interstate commerce in purpose or effect. *See e.g., Comptroller of the Treasury of Md. v. Wynne*, 575 U.S. 542, 561 n.4 (2015); *Am. Trucking Ass'Ns, Inc. v. Alviti*, 14 F.4th 76, 89 (1st Cir. 2021). "A state statute impermissibly discriminates only when it discriminates between similarly situated in-state and out-of-state interests." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 163 (5th Cir. 2007). Thus, a plaintiff must plead facts plausibly showing similarly situated in-state and out-of-state interests. *Id.* Merely pleading facts showing a "plausible inference that Plaintiffs' products compete with conventional meat in interstate commerce," ECF 25 at 11, is not sufficient. *See Allstate Ins. Co.*, 495 F.3d at 163.[2]

    Plaintiffs make no factual allegations that their business is similarly situated to conventional meat producers. Rather they call State Defendants' argument "meritless" and point to the insufficient allegation that their products compete with real meat. ECF 25 at 11. Merely "competing in the same market is not sufficient to conclude that entities are similarly situated."

---

[2] Plaintiffs cite *Turtle Island Foods Inc. v. Abbott* in support of their contention that they have sufficiently pled a claim under the dormant Commerce Clause by alleging that their product competes with traditional meat. No. 1:23-cv-1032, 2024 WL 5659990 (W.D. Tex. Sept. 23, 2024); *see also* ECF 25 at 11. But this is inapposite; it conflicts with *Brown* and binding Supreme Court precedent in *Exxon Corp.*, both of which require Plaintiffs to plead more facts than they have pled. *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc.*, 567 F.3d at 527; *Exxon Corp.*, 437 U.S. at 127; *see also* ECF 22 at 13. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015) ("conclusory assertions" are not adequate). All of Plaintiffs' dormant Commerce Clause claims do not meet this standard and therefore should be dismissed.

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 527 (9th Cir. 2009) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997)). Plaintiffs need to plead facts that demonstrate that they are similarly situated, not just competing in the same market, to be entitled to the relief which they request. *Id.; see also Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 127 (1978).

For the foregoing reasons, Plaintiffs' § 1983 Dormant Commerce claims should be dismissed for lack of subject matter jurisdiction and Plaintiff's discriminatory effects claims should be dismissed for failure to state a plausible claim for relief under 12(b)(6).

## II.    UPSIDE's four preemption claims should be dismissed.

UPSIDE's four preemption claims should be dismissed for several reasons. First, UPSIDE's § 1983 preemption claims (here brought separately from its *Ex parte Young* claims) are barred by sovereign immunity and should be dismissed for lack of subject matter jurisdiction for the reasons previously discussed. *See supra* at § I(2). Second, all of UPSIDE's preemption claims should be dismissed because they are foreclosed by 21 U.S.C. § 467c. Third, all UPSIDE's preemption claims should be dismissed because UPSIDE did not plausibly allege that SB 261 is preempted by the PPIA.

### A.  The PPIA forecloses UPSIDE from bringing its preemption claims.

The plain text of 21 U.S.C. § 467c forecloses UPSIDE's preemption claims. Section 467c states:

> The United States district courts, the District Court of Guam, the District Court of the Virgin Islands, the highest court of American Samoa, and the United States courts of the other territories, are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this chapter, and shall have jurisdiction in all other kinds of cases arising under this chapter, except as provided in section 457(d) or 467 of this title. **All proceedings for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States.** Subpenas [sic] for witnesses who are required to attend a court of the United States, in any district, may run into any other district in any such proceeding.

21 U.S.C. § 467c (emphasis added). Section 467c thus forbids private parties from bringing proceedings to enforce or "restrain violations of this chapter." *Id.* It is located in Chapter 10 of the

United States Code. *Id.* Chapter 10 has several sections detailing prohibited acts, offenses, and punishment. *E.g.,* 21 U.S.C. §§ 458, 461, 467e. Section 458 prohibits persons, brand manufacturers, and printers from engaging in certain behaviors. 21 U.S.C. § 458. Section 461 describes the criminal penalties persons may face for violations of enumerated sections of the Chapter. *Id.* § 461. Section 467e, among other things, prohibits States, Territories, and the District of Columbia, from imposing requirements different than or in addition to certain portions of the Chapter. *Id.* § 467e ("prohibition of additional or different requirements"). UPSIDE's preemption claim is an attempt to restrain State Defendants from violating this prohibition. *See e.g.,* ECF 1 at 42 (arguing that "by preventing UPSIDE from selling" its cultivated chicken protein, State Defendants are "imposing an 'ingredient requirement' . . . in contravention of section 467e of the PPIA."); ECF 25 at 15 (describing section 467e as forbidding states from enforcing certain regulations). UPSIDE asks this Court to exempt section 467e from section 467c's prohibition on private proceedings so that it may bring its preemption claim. *See* ECF 25 at 13. This request is not supported by the text of the statute.

Congress could have exempted section 467e from section 467c's prohibition on private proceedings, but it chose not to. The best demonstration of this is the text of section 467c itself. The first sentence of section 467c states that courts have the jurisdiction to "enforce, and to prevent and restrain violations of, this chapter" and "have jurisdiction in all other kinds of cases arising under this chapter, *except* as provided in section 457(d) or 467 of this title." 21 U.S.C. § 467c (emphasis added). In that sentence, Congress clearly included two exceptions to the general determination of which courts have jurisdiction to prevent and restrain violations of the PPIA. *Id.* This illustrates that Congress knew how to create exceptions to its general enforcement requirements. However, in section 467e, where Congress requires "all proceedings for the enforcement or to restrain violations of this chapter" to be brought by the United States, Congress did not provide for any exceptions. *Id.* It follows, therefore, that Congress did not intend to exempt any sections from the requirement that actions to enforce or restrain violations of the PPIA must

be brought by the United States. Because UPSIDE is not the United States, its preemption claims are foreclosed.

The only court that has addressed the foreclosure argument has adopted it. *See Upside Foods, Inc. v. Simpson*, No. 4:24cv316-MW/MAF, 2025 U.S. Dist. LEXIS 85699, at *13–16 (N.D. Fla. Apr. 25, 2025) (holding the PPIA's enforcement provision foreclosed UPSIDE's preemption claims under § 1983 and in equity). UPSIDE argues it must have a cause of action because "every lawsuit that has ever been brought to challenge a state law as preempted under the PPIA has been brought by a private party and not the United States." ECF 25 at 13. However, the issue of claim foreclosure was not addressed in any of the cases UPSIDE cites. ECF 25 at 13 n.3; *Nw. Selecta, Inc. v. Gonzalez-Beiro,* 145 F.4th 9, 16 (1st Cir. 2025) (concerning a Puerto Rican regulation with inspection requirements which were "'in addition to, or different than' the PPIA's requirements"); *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1145–53 (9th Cir. 2017) (interpreting the PPIA's ingredient requirement); *Nat'l Broiler Council v. Voss*, 44 F.3d 740, 743–47 (9th Cir. 1994) (per curiam) (concerning labeling requirements); *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1056–65 (E.D. Cal. 2013), *aff'd,* 636 F. App'x 956, 957 (9th Cir. 2016) (concerning packaging requirements). Plaintiffs would have this court take the position that a court's silence on an issue is more persuasive than a court's dispositive ruling on that issue. The Supreme Court foreclosed this interpretive cannon, citing silence or absence of argument, one hundred years ago. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Plaintiffs also argue that "the general rule [is] that 'if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.'" ECF 25 at 14 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015)). Plaintiffs misapply *Armstrong*. Despite this general rule, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong,* 575 U.S. at 327 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S.

44, 74 (1996)). In *Armstrong*, the Court found that Congressional foreclosure of private enforcement prevents Plaintiffs from invoking the court's equitable powers to circumvent that exclusion. *Id.* at 328–29; *see also id.* at 337 (Sotomayor, J., dissenting) (noting that the majority foreclosed "the equitable powers of the federal courts . . . without pointing to the sort of detailed remedial scheme we have previously deemed necessary to establish congressional intent to preclude resort to equity"); Note, *Equitable Relief—Ex parte Young After* Armstrong, 131 Harv. L. Rev. 828 (2018).

In the present case, section 467c *explicitly* forecloses private enforcement. And the PPIA creates a comprehensive remedial scheme that vests enforcement authority in federal agencies, with prescribed administrative and judicial remedies for violations. *See* 21 U.S.C. §§ 467–467e; *see also id.* at §§ 455–64. Allowing private enforcement with equitable relief "would distort the scheme of . . . judicial review and limited remedies" created by the underlying statute. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 127 (2005). It would result in the very patchwork and decentralized system of regulation that Congress sought to prevent through the enactment of the PPIA. By vesting exclusive enforcement power in the United States alone, Congress ensures that the PPIA is enforced uniformly throughout the nation, rather than subject to multifarious and piecemeal relief sought by the industries the statute seeks to regulate.

### B.  UPSIDE does not plausibly allege that SB 261 is preempted by the PPIA.

SB 261 does not create requirements "in addition to, or different than" those imposed by the PPIA, ECF 25 at 15, nor does the FSIS Directive mandate states permit the sale of cell-cultured poultry protein within their borders. The FSIS Directive, which is not a notice and comment regulation, merely states FSIS intends to regulate cell-cultivated poultry products in the same manner and subject to the same general regulations as other poultry products. *See* U.S. Dep't of Agric., FSIS Directive 7800.1, *FSIS Responsibilities in Establishments Producing Cell-Cultured Meat & Poultry Food Products* (June 21, 2023), https://www.fsis.usda.gov/policy/fsis-directives/7800.1. Just as the PPIA does not preempt pure sales bans on conventional poultry products, *Ass'n des*

*Éleveurs de Canards et d'Oies du Quebec*, 870 F.3d at 1150, it does not preempt pure sales bans on UPSIDE's cell-cultured poultry product.

SB 261 does not create an ingredient requirement different from or in addition to those under the PPIA. SB 261 does not regulate permissible ingredients within a food product such as the proper proportions of different flavorings, proteins, or meats. *Cf. Armour & Co. v. Ball*, 468 F.2d 76, 81–85 (6th Cir. 1972) (finding a Michigan law that required different proportions of certain ingredients was preempted under a substantively identical ingredient requirement). UPSIDE has yet to point to which provision in the PPIA requires the sale of cell-cultivated poultry protein in any proportion.

SB 261 does not prohibit UPSIDE from manufacturing its cell-cultivated poultry protein or regulate how it does so. Tex. Health & Safety Code §§ 431.02105(a), .002(5-a). UPSIDE incorrectly claims that SB 261 prevents "UPSIDE from manufacturing" its cell-cultivated poultry protein. ECF 25 at 17. This is not true. SB 261 does not prohibit the manufacturing of cell-cultivated protein, even in Texas. SB 261 contains no regulations, requirements, or provisions concerning how, where, or when UPSIDE may cultivate its cells. Tex. Health & Safety Code §§ 431.02105(a),.002(5-a). To the contrary, SB 261 merely states that those cells may not be sold in Texas.

SB 261 is not like *Northwestern Selecta Inc. v. Gonzales-Beiro*, 145 F.4th 9, 16 (2025). ECF 25 at 15–16. *Northwestern Selecta* dealt with a Puerto Rican regulation that "outlines various requirements regarding the transportation, storage, inspection, packaging, and labeling of poultry products brought into Puerto Rico." *Id.* at 13. There, the First Circuit found the PPIA preempted the Puerto Rican regulation because it included an inspector requirement that is not present in the PPIA and that affects the facilities' daily activities. *Id.* at 16–19. Here, SB 261 does not contain any requirements concerning how cell-cultivated protein manufacturers manage their facilities, nor does SB 261 affect the daily operation of those facilities. Tex. Health & Safety Code §§ 431.02105(a),.002(5-a).

## CONCLUSION

For the foregoing reasons, the Court should grant State Defendants' Motion to Dismiss.

Dated: November 24, 2025.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

*/s/ Ali M. Thorburn*
**ALI M. THORBURN**
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

**OFFICE OF THE**
**ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR STATE DEFENDANTS**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on November 24, 2025, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

MARCO VASQUEZ JR. (TX Bar No. 24115892)
ARIF PANJU (TX Bar No. 24070380)
816 Congress Ave., Suite 970
Austin, TX 78701
Phone: (512) 480-5936
Fax: (512) 480-5937
mvasquez@ij.org
apanju@ij.org

PAUL M. SHERMAN (VA Bar No. 73410)*
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
psherman@ij.org

COUNSEL FOR PLAINTIFFS
WILD TYPE, INC. D/B/A WILDTYPE AND
UPSIDE FOODS, INC.

*/s/ Ali M. Thorburn*
**ALI M. THORBURN**
Special Counsel