UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **WILD TYPE, INC. D/B/A/ WILDTYPE And UPSIDE FOODS, INC.,** | § § § § § | |
| **Plaintiffs,** | § § § | |
| **v.** | § § § | **CIVIL NO. 1:25-CV-1408-ADA-ML** |
| **JENNIFER A. SHUFORD, in her official capacity as the Commissioner of the Texas Department of State Health Services; CECILE ERWIN YOUNG, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission; KEN PAXTON in his official capacity as the Attorney General of Texas; and DELIA GARZA in her official capacity as the County Attorney of Travis County,** | § § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

## ORDER

On January 16, 2026, the Court heard arguments on Defendant Garza's Motion to Dismiss for Lack of Jurisdiction (Dkt. 15), Defendants Paxton, Young, and Shuford's ("State Defendants") Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Dkt. 22) and Plaintiffs' Motion for Preliminary Injunction (Dkt. 21). The Court orally ruled on all motions at the hearing. As stated by the undersigned at the hearing, Defendant Garza's Motion to Dismiss for Lack of Jurisdiction (Dkt. 15) is **GRANTED.** The State Defendants' Motion to Dismiss is **GRANTED-IN-PART**. It is **GRANTED** to the extent the State Defendants sought to dismiss Plaintiffs' claims under the PPIA under 12(b)(6), and it is **DENIED** to the extent it sought dismissal under 12(b)(1) due to lack of jurisdiction. Plaintiffs' Motion for Preliminary Injunction is **DENIED.**

## I.    BACKGROUND

Plaintiffs Wild Type, Inc. ("Wildtype") and UPSIDE Foods, Inc. ("UPSIDE") brought this lawsuit challenging Texas's recently enacted SB 261, a law that prohibits the sale of "cell-cultured protein" in Texas, passed during the 2025 legislative session. See Dkt. 1; Tex. Health & Safety Code §§ 431.002(5-a), 431.02105(a). SB 261 defines "cell-cultured protein" as "a food product derived from harvesting animal cells and artificially replicating those cells in a growth medium to produce tissue." *Id.* § 431.002(5-a). The prohibition applies equally to all cell-cultured protein products regardless of whether this product is manufactured in Texas or elsewhere. *Id.* §§ 431.002(5-a), 431.02105(a). SB 261 is temporary and, absent further legislative action, will expire on September 1, 2027. *Id.* § 431.02105(c). Bans similar to Texas's have been passed in Mississippi, Alabama, and Florida. *See, e.g.*, 2025 Miss. HB 1006 § 1 (enrolled); 2024 Ala. SB 23 (enrolled); Fla. Stat. § 500.452.

Plaintiffs are manufacturers of cell-cultured protein, with Wildtype producing cultivated salmon and UPSIDE producing cultivated chicken. Plaintiffs sought a preliminary injunction from this Court, arguing that SB 261 is unlawful under the Dormant Commerce Clause and is preempted by federal law, and that injunctive relief is required to prevent irreparable harm. Dkt. 21 at 1.

Defendants can be separated into two categories: Defendant Garza, who was sued in her official capacity as the County Attorney of Travis County, is in her own category; Defendants Jennifer Shuford, sued in her official capacity as the Commissioner of the Texas Department of State Health Services, Cecile Erwin Young, sued in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, and Ken Paxton, sued in his official capacity as the Attorney General of Texas are all in a category referred to as the "State Defendants."

Defendant Garza and the State Defendants filed separate motions to dismiss, both relying

2

on Rule 12(b)(1) and 12(b)(6) grounds. The Court held a hearing on January 16, 2026, to address Plaintiffs' Motion for a Preliminary Injunction (Dkt. 21), Defendant Garza's Motion to Dismiss (Dkt. 15), and the State Defendants' Motion to Dismiss (Dkt. 22).

## II.    LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden to prove jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Id.* (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981)). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998)).

### B.  Motion to Dismiss for Failure to State a Claim

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Id.* In evaluating motions to dismiss filed under Rule 12(b)(6), the court "must accept all well-pleaded facts as true, and ... view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). On the other hand, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

### C.  Motion for Preliminary Injunction

As the movant seeking a preliminary injunction, plaintiffs have the burden of establishing that: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc).

Plaintiffs must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if the plaintiffs fail to meet any of the four requirements, the court cannot grant the preliminary injunction. The decision whether to grant a preliminary injunction lies within the

sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

## III.   DISCUSSION

### A.  Defendant Garza's Motion to Dismiss for Lack of Jurisdiction

Defendant Garza argues that the Court lacks jurisdiction over her because Plaintiffs' claims against Garza are not ripe. Dkt. 15 at 4. Defendant Garza argues that the suit does not allege that any Texas prosecutor, including Garza in her capacity as County Attorney of Travis County, has demonstrated any intent to prosecute those who sell cultivated meat. *Id.* Therefore, Plaintiffs' claims against Garza are entirely speculative. *Id.*

Further, Garza argues that she is entitled to qualified immunity because she does not fit within the narrow *Ex parte Young* exception to immunity. *Id.* at 6. In *Mi Familia Vota v. Ogg*, the Fifth Circuit described the *Ex parte Young* "guideposts." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157). The standard set forth in *Ogg* to fit within the narrow *Ex parte Young* exception to immunity are: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented,' i.e., a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law." *Id.* at 325 (quoting *Tex. All. for Retired Ams*., 28 F.4th at 672). "Mere authority" over whether to bring criminal charges is not enough to invoke the *Ex parte Young* exception. *Id.* at 326. On the demonstrated willingness prong, the "prior or contemporaneous affirmative acts of the named official" must show some willingness to enforce. *Fund Texas Choice v. Deski*, No. 1:22-CV-859-RP, 2025 WL 2020052, at *9 (W.D. Tex. May 23, 2025) (unpublished) (quoting *Ogg* at 330). A failure to disavow enforcement is not enough. *Id.* at *10.

Defendant Garza argues there are no allegations that she has taken any positions concerning SB 261. Dkt. 15 at 7. Defendant Garza argues that because Plaintiff's Complaint provides no allegations that show she has demonstrated any willingness to enforce or is constrained to do so under the law, it has failed to show she falls under the narrow *Ex parte Young* exception under guidance from *Ogg* and the claims against her should be dismissed under Rule 12(b)(1).

The Court agrees that Defendant Garza is an improper defendant in this matter and that Plaintiffs' claims are not ripe as to her. The Court finds that she does not fit within the narrow *Ex parte Young* exception, so she is also entitled to qualified immunity based on her distinct position. The Court therefore grants Defendant Garza's motion to dismiss under Rule 12(b)(1) and finds that Plaintiffs' claims against her are dismissed.

### B. State Defendants' Motion to Dismiss for Lack of Jurisdiction

The State Defendants argue in their 12(b)(1) Motion that the Court is barred from hearing this suit by the Eleventh Amendment because the State Defendants are government officials entitled to sovereign immunity when sued in their official capacities. Dkt. 22 at 4. Plaintiffs, however, argue that the *Ex parte Young* waiver to sovereign immunity applies in this case and that they may bring their Dormant Commerce Clause claims under § 1983 based on Fifth Circuit precedent. *See* Dkt. 25 at 4 (citing *Dennis v. Higgins*, 498 U.S. 439 (1991) and *Harrison v. Young*, 48 F.4th 331, 337–39 (5th Cir. 2022)). Plaintiffs argue that the Supreme Court in *Dennis* expressly held that plaintiffs may bring lawsuits under § 1983 against state officials to enforce their rights under the Dormant Commerce Clause. *Id.* at 5 (citing *Dennis*, 498 U.S. at 443–51). The Court finds that while claims against Defendant Garza proceeded under a different analysis based on her unique position as a county attorney, they are not similarly barred against the State Defendants and they may bring their Dormant Commerce Clause claims under § 1983. The State Defendants'

motion to dismiss is denied on the 12(b)(1) grounds.

### C.  State Defendants' Motion to Dismiss Plaintiffs' PPIA Claims under Rule 12(b)(6)

The State Defendants separately argue that Plaintiff UPSIDE's preemption claim under the Poultry Product Inspection Act (PPIA) should be dismissed under Rule 12(b)(6). This claim was brought only by UPSIDE, which produces cultivated chicken. UPSIDE alleges that the PPIA expressly preempts SB 261 because its Ingredients Clause and Facilities Clause prevent the state from imposing regulatory provisions that exceed or differ from federal regulations promulgated under the PPIA. *See* Dkt. 1, Compl.  Defendants argue that (i) UPSIDE's § 1983 preemption claims are legally insufficient for the same reasons as Plaintiffs' claims under § 1983 for alleged violations of the dormant Commerce Clause; (ii) claims to enforce alleged violations of the PPIA can only be brought by and in the name of the United States, effectively foreclosing any private right of action Upside may have to bring a preemption claim; and (iii) the PPIA simply does not preempt SB 261. Dkt. 22 at 6. The Court agrees that UPSIDE's PPIA preemption claims should be dismissed under Rule 12(b)(6).

Addressing a Florida statute similar to SB 261, the Northern District of Florida discussed this issue recently in *Upside Foods, Inc v. Simpson*. No. 4:24CV316-MW/MAF, 2024 WL 5274483 (N.D. Fla. Oct. 11, 2024). The Florida court, however, did not address whether the express preemption claim could be brought under § 1983, because it found that the plaintiff failed to show it was substantially likely to succeed on the merits of the PPIA preemption claim. *See id.* at *5. This Court agrees with Defendant's third argument, that the PPIA simply does not preempt SB 261 and will allow its ruling to stand on that ground.

At the hearing, Defendants' primary argument on this point was that SB 261 is a sales ban and therefore does not fall within the scope of the PPIA's preemption clause. *See* Jan. 16 Hr. Tr.

6:23-34. The Fifth Circuit recently clarified the scope of preemption under the PPIA in *Williams*

*v. Winegrove*, clarifying an intra-district court split.  153 F.4th 455, 463 (5th Cir. 2025). The PPIA,

administered by the U.S. Department of Agriculture's Food Safety and Inspection Service

("FSIS"), regulates the processing, inspection, distribution, labeling, and sale of poultry products

sold in interstate commerce. *Id.* The PPIA has an express preemption clause providing that

"[r]equirements within the scope of this chapter with respect to premises, facilities and operations

of any official establishment which are in addition to, or different than those made under this

chapter may not be imposed by any State ...." *Id.* (quoting 21 U.S.C. § 467e). The Fifth Circuit in

*Williams* clarified that the "domain of the PPIA is food safety as well as any behavior that would

cause "adulteration of product." " *Id.* The *Williams* court therefore found that a plaintiff's claims

alleging a meatpacking plant's negligence in preventing its workers from protecting against the

spread of COVID-19 were not preempted by the PPIA, as the meatpacking plant had never made

a connection between the duty to prevent the spread of COVID-19 and food product safety. *Id.*

The Ninth Circuit also addressed the PPIA's scope in *Ass'n des Éleveurs de Canards et*

*d'Oies du Quebec v. Becerra*. 870 F.3d 1140 (9th Cir. 2017). The *Carnards* court addressed

whether a ban on foie gras would be preempted by the PPIA, though the state law at issue required

that foie gras be made only from the livers of birds who were not force-fed. *Id.* at 1143. The

*Carnards* court found that the law's sales ban was not expressly preempted by the PPIA—and

stated that even if the law resulted in a total ban of foie gras regardless of its production method,

it wouldn't run afoul of the PPIA's preemption clause. Id. at 1150. The *Carnards* court explained

that the "PPIA targets the slaughtering, processing, and distribution of poultry products," but it

does not mandate that particular types of poultry be produced for people to eat. *Id.* (citing 21 U.S.C.

§§ 451–452). Its preemption clause regarding "ingredient requirements" governs only the physical

composition of poultry products. *Id.* Nothing in the federal law or its implementing regulations limits a state's ability to regulate the *types* of poultry that may be sold for human consumption. *Id.* (emphasis in original). The *Carnards* court explained that if foie gras was made, producers must, of course, comply with the PPIA, but if a state *banned* a poultry product like foie gras, there is nothing for the PPIA to regulate. *Id.* (emphasis added).

The power to preempt state law is "an extraordinary power in a federalist system." *Id.* at 464 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)). The *Williams* court explained that the power to preempt would be "especially" powerful where the preemption arguments advanced would preempt the state's traditional ability to regulate "matters of health and safety" under their "historic police powers." *See id.* (quoting *De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*, 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)).

As noted by Defendants in the hearing, when evaluating an express preemption claim the Court looks to the scope of the PPIA's express preemption clause then determines whether SB 261 falls within that scope. Jan. 16 Hr. Tr. 7:15-17. Applying *Williams*, the scope of the PPIA's express preemption claim covers food safety as well as any behavior that would cause adulteration of product. Defendants correctly argue that the PPIA's express preemption clause does not reach complete sales bans. Complete sales bans do not alter whether food being sold is less safe than the PPIA would require, and a complete sales ban has nothing to do with adulterating chicken products. The Court agrees with Defendants that SB 261 constitutes a complete sales ban that does not fall under the PPIA's express preemption clause. Therefore, UPSIDE's preemption claims fail to state a plausible claim for relief and those claims should be dismissed.

## D.  Plaintiffs' Motion for Preliminary Injunction

Next, the Court turns to Plaintiffs' Motion for Preliminary Injunction. At the hearing, the

undersigned question Plaintiffs' counsel specifically about the irreparable harm factor. *See* Jan. 27 Hr. Tr. 35:3-4; 37:4-7. Plaintiffs argued that irreparable harm can be economic harm if it's the type of harm one cannot recover damages for—and argued that Plaintiffs are suffering from economic harm and a variety of intangible business harms. *Id.* 35:5-14. Defendants argued essentially in briefing and at the hearing that Plaintiffs had made very few—only one individual sale in UPSIDE's case—to customers in Texas. *See, e.g., id.* 39:1-7. Therefore, Defendants maintain that Plaintiffs' harms would be speculative as they had no pending contracts in Texas. And Defendants argued that enjoining an entire state law for the purposes of two companies in a new industry would make the balance of equities weigh against the Plaintiffs. *See id.* 39:14-20.

The hearing and briefing features substantial arguments on whether SB 261 was enacted solely to protect Texas's agricultural industry, or advances a legitimate local purpose due to legislators' concern about how cell-cultured protein products might affect the health and safety of Texans. Defendants maintain that Plaintiffs' Dormant Commerce Clause claim would fail because, even if heightened scrutiny applies, SB 261 would pass that scrutiny because it has a limited two-year application and was enacted for the purpose of protecting the health and safety of Texans. *See* Dkt. 24 at 17.

The Court will decline to rule at this time on the likelihood of success for the Dormant Commerce Clause claim, because the Court finds the preliminary injunction should not be granted based on Plaintiffs' failure to show irreparable harm or that the balance of equities weigh in favor of granting the injunction at this time. The Court finds that due to SB 261's two-year application period, and Plaintiffs' lack of contractual business already in place for Texas, there is not irreparable harm. More importantly, the Court finds that enjoining the law from having any effect in Texas, for the sake of allowing two companies who were only newly beginning to transact

business in Texas, would not comport with the balance of equities required for preliminary injunctive relief. Plaintiffs must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. While Plaintiffs have shown a potential for some harm, the Court finds that considering all circumstances and all factors together, Plaintiffs have not carried the burden needed to receive injunctive relief at this time. This Court will decline to exercise its discretion to preliminarily enjoin all of SB 261.

## IV.    CONCLUSION

For the reasons stated above, the Court orders that Plaintiffs' claims against Defendant Garza are dismissed, UPSIDE's preemption claims under the PPIA are dismissed, and Plaintiffs are not entitled to a preliminary injunction. **IT IS THEREFORE ORDERED** that:

Defendant Garza's Motion to Dismiss under Rule 12(b)(1) (Dkt. 15) is **GRANTED.**

Defendants Paxton, Young, and Shuford's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Dkt. 22) is **GRANTED-IN-PART**. To the extent the Motion sought to dismiss Plaintiff UPSIDE's preemption claims under Rule 12(b)(6) it is **GRANTED.** The remainder of the Motion is **DENIED.**

Plaintiffs' Motion for Preliminary Injunction (Dkt. 21) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** on January 30, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE